**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTONE WHITE, *et al.*,<br><br>Defendants. | Criminal Action No. 93-97 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

In 1994, Antone White, Eric Hicks, and Ronald Hughes were sentenced to life in prison

after a jury found them guilty of drug trafficking and racketeering conspiracy offenses, stemming

from White and Hicks' leadership of, and Hughes' membership in, the "First Street Crew,"

which, from early 1988 until the defendants' arrests approximately five years later, sold crack

cocaine and engaged in "violent activities," including murder and witness intimidation.  *United*

*States v. White*, 116 F.3d 903, 909–11 (D.C. Cir. 1997).  Now, twenty-five years later, White and

Hicks seek reductions of their sentences to time-served, and Hughes seeks a reduction in his

supervised release term, based on Section 404 of the First Step Act of 2018 ("First Step Act"),

Pub. L. 115-391, § 404, 132 Stat. 5194 (2018).  *See generally* White's Emergency Suppl. Mot. to

Reduce Sentence ("White Mot."), ECF No. 690; Hicks' Mot. for Reduction of Sentence, ECF

No. 684; Hicks' Emergency Suppl. Mot. to Reduce Sentence ("Hicks Suppl. Mot."), ECF No.

688; Hughes' Emergency Mot. to Reduce Sentence ("Hughes Mot."), ECF No. 695; Hughes

Reply, ECF No. 707.[1]  Section 404 makes retroactively available the more lenient penalties for

---

[1] Hughes also initially requested a reduced sentence to "time served," Hughes Mot. at 9, but completed his prison term on May 13, 2019, *see* Hughes Reply at 1, and subsequently revised his requested relief to seek only a reduced "term of supervised release" from five to three years, *id*. at 1, 14.

certain crack cocaine offenses enacted in the Fair Sentencing Act of 2010 ("FSA").  Upon

consideration of the defendants' motions for sentence reductions pursuant to Section 404 of the

First Step Act, for the reasons discussed below, White and Hughes' motions are denied and

Hicks' motion is granted in part and otherwise denied.[2]

## I.    BACKGROUND

As necessary context for the resolution of the pending motions, summarized below is

background regarding the defendants' offense conduct, convictions and sentences, largely drawn

from the defendants' sentencing hearings and related documents, and the D.C. Circuit's review

of the defendants' direct appeals of their convictions, followed by review of the relevant

statutory background.

### A.    Factual Background

Starting in early 1988, for approximately five years until the defendants' arrests, the

"First Street Crew" sold "large amounts of crack" in the area of First and Thomas Streets, N.W.

*White*, 116 F.3d at 909.  Antone White "orchestrated the group's activities," working with

several friends, including Eric Hicks from the outset and Ronald Hughes, who began working

with White in 1990.  *Id.*  "Although White initially sold small amounts of cocaine, he soon

became a wholesale supplier, selling 'weight,' . . . and fronting his cohorts smaller amounts of

cocaine to sell for him."  *Id.*  Hicks eventually "took charge when . . . White was 'out of the

neighborhood,' i.e., in prison."  *Id.*

The First Street Crew's "drug operation" involved "violent activities," including the

murder and intimidation of witnesses against them.  *Id.*  For example, "ample evidence" showed

that on October 6, 1992, "White and Hughes murdered" Arvell Williams, an acquaintance of

---

[2]    This case was reassigned to the undersigned Chief Judge in December 2016.  Min. Entry (Dec. 8, 2016);
*see* D.D.C. LOCAL CRIM. R. 57.14(d).

White who was assisting in the United States Attorney's Office's investigation of the First Street Crew.  *Id.* at 909, 916.  After White correctly suspected that Williams was cooperating with law enforcement, White and Hughes shot Williams "sixteen times at close range," and "Williams was pronounced dead on the scene."  *Id.* at 909.  "Several witnesses identified the shooters as White and Hughes."  *Id.*  Moreover, one witness testified that after the murder, "he had overheard a conversation between White and Hughes in which one of them said '[We] killed the motherfucker,'" *id.* at 916 (alteration in original), and another witness "testified that White had told him 'We took care of . . . [Williams],'" *id.* (second alteration in original).

In March 1993, White, Hicks, Hughes, and two other co-defendants were charged in a 26-count indictment with, *inter alia*, "conspiracy to distribute cocaine base, RICO conspiracy, and numerous individual counts of drug distribution."  *Id.* at 909–10.  Trial began in November 1993 and went to the jury approximately three months later on January 28, 1994.  *See* Docket Entry (Nov. 1, 1993); Charge to the Jury (Jan. 28, 1994), ECF No. 215.

### 1.    *The Defendants' Convictions*

On February 16, 1994, the jury found White, Hicks, and Hughes guilty of conspiracy to distribute and possess with intent to distribute fifty (50) grams or more of cocaine base (Count 1), in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(iii) (1993), an offense punishable by a statutory mandatory minimum term of imprisonment of 10 years and up to life imprisonment.  *See* White Judgment & Commitment Order ("White J&C") at 1, ECF No. 633-2; Hicks Judgment & Commitment Order ("Hicks J&C") at 1, ECF No. 301; Hughes Judgment & Commitment Order ("Hughes J&C") at 1, ECF No. 627-2; Indictment (Retyped) (Jan. 28, 1994) at 2–20, ECF No. 228; *see also* 21 U.S.C. § 846 (1993) (subjecting an individual to "the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy").  In connection with this count, the jury was instructed that the

government must prove "some quantity of . . . crack cocaine," but that "the actual amount of crack possessed or distributed or the amount alleged in the indictment is not important and is not an element of the conspiracy offense."  Trial Tr. (Jan. 28, 1994) at 45:9-13, ECF No. 320.  As discussed *infra*, in Part I.A.2, the Probation Office's Presentence Investigation Report ("PSR") stated, based on the trial testimony, and the sentencing judge found, by a preponderance of the evidence, that the conspiracy involved the distribution, conservatively estimated, of 21.87 kilograms of cocaine base.

White and Hicks were also convicted of a Racketeer Influenced and Corrupt Organization ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 5), which was punishable by a statutory maximum term of life imprisonment because the RICO violation was "based on" the "racketeering activity" in Count 1.  White J&C at 1; Hicks J&C at 1; *see also* Indictment (Retyped) (Jan. 28, 1994) at 22–30; 18 U.S.C. § 1963(a) (1993) ("Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both . . . .").

Finally, the jury convicted all three defendants of individual counts of unlawful distribution of, or unlawful possession with intent to distribute, cocaine base.  White and Hicks were convicted in Counts 18 and 11, respectively, of distribution, on different dates, of 5 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii) (1993), which offenses were punishable by a statutory mandatory minimum term of imprisonment of 5 years and up to 40 years' imprisonment.  *See* White J&C at 1 (Count 18 for distribution conduct on Oct. 2, 1992); Hicks J&C at 1 (Count 11 for distribution conduct on Oct. 11, 1991); *see also* Indictment (Retyped) (Jan. 28, 1994) at 32, 35.  The jury was instructed as to these two counts

that the "government must prove beyond a reasonable doubt for each count that the defendant distributed a mixture or substance with the total weight of five grams or more which contained crack cocaine." Trial Tr. (Jan. 28, 1994) at 30:10-13. As discussed *infra*, in Part I.A.2, the defendants' PSRs stated that Counts 18 and 11 involved 49.99 grams and 5.426 grams of cocaine base, respectively, drug quantities that the parties do not dispute. White Presentence Report ("White PSR") ¶ 35, ECF No. 633-1; White Mot. at 6 n.4; Hicks Presentence Report ("Hicks PSR") ¶ 34, ECF No. 713; Hicks Suppl. Mot. at 6 n.5.

Finally, each defendant was also convicted in separate counts of distribution of, or unlawful possession with intent to distribute, on different dates, a detectable amount of cocaine base, punishable by up to 20 years' imprisonment, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (1993); *see* White J&C at 1 (convictions on Counts 6 and 7 for conduct on April 15 and 23, 1991, respectively); Hicks J&C at 1 (convictions on Counts 8 and 10 for conduct on Sept. 20 and Oct. 8, 1991, respectively); Hughes J&C at 1 (convictions on Counts 9, 12, and 13 for conduct on Oct. 4, 1991, and Jan. 14, 1992 twice, respectively); *see also* Indictment (Retyped) (Jan. 28, 1994) at 30–33 (charging a "detectable amount of cocaine base" for each of these counts). The jury was instructed on these counts that the government "need not prove that the defendant distributed any particular numerical amounts or weight of crack but must prove beyond a reasonable doubt for each count that the defendant distributed a detectable or measurable amount of crack." Trial Tr. (Jan. 28, 1994) at 30:4-9; *see also id.* at 31:1–33:7 (jury instruction on Count 13, for which no finding of a particular quantity of drugs was required).

Hicks was acquitted of using or carrying a firearm in relation to a drug trafficking crime (Count 15), s*ee* Verdict Form at 4, ECF No. 238, and the jury was unable to reach a verdict, resulting in a mistrial, on the charges against White and Hicks for engaging in a continuing

criminal enterprise ("CCE") (Count 2), *id.* at 1, 3; as well as the charges against White and

Hughes for the murder of Arvell Williams in furtherance of a CCE (Count 3), first-degree

murder while armed (Count 4), using and carrying a firearm in relation to a crime of violence or

a drug trafficking crime (Count 19), and possession of a firearm during a crime of violence

(Count 20), *id.* at 2, 3, 5; *White*, 116 F.3d at 910.

### 2.     *The Defendants' Sentences*

Following a two-day hearing, Judge Harold Greene sentenced White, Hicks, and Hughes

to life in prison, after highlighting the defendants' "very large distribution of . . . twenty-one

kilos" of crack cocaine, and "the intimidation or worse of witnesses."  Sentencing Tr. (May 11,

1994) at 93:1-2, 12-13, ECF No. 354.  These defendants were not "minor offenders," *id.* at 92:3,

but rather "kingpins in the drug trade," *id.* at 92:6.  Moreover, in addition to "clear and

convincing evidence" that White and Hughes murdered Williams, *id.* at 110:8-10, "the record"

was "replete with" the defendants' "threats to others," and included "several witnesses who . . .

were obviously scared," including "some [who] refused to give candid testimony when they

finally did take the stand," *id.* at 93:14-17.  The sentencing judge found that life sentences for

White, Hicks, and Hughes were warranted "because if witnesses can be intimidated, injured or

killed, all the crime bills Congress may pass will be just illusions, limited in practical effect."  *Id.*

at 93:23-25.  Application of the sentencing guidelines and related factual findings for each

defendant, as well as their multiple past challenges to their convictions and sentences, are

discussed in more detail below.

### a.     **Antone White**

In determining the applicable sentencing range under the U.S. Sentencing Commission's

GUIDELINES MANUAL, White's conspiracy convictions in Counts 1 and 5, and three individual

counts of distribution of cocaine base in Counts 6, 7, and 18, were grouped together, pursuant to

U.S.S.G. § 3D1.2(d).  White PSR ¶ 86.  The applicable base offense level, under U.S.S.G. §§ 2D1.1(a)(3), (c)(1), was 42 due to the "over 21 kilos of crack . . . properly attributed to the conspiracy and to" White, and "it was foreseeable by him, as a leader of the crew and involved in it from the beginning, that there would be that much distribution or possession of crack by the conspiracy."  Sentencing Tr. (May 11, 1994) at 32:8-12; *see* White PSR ¶ 41.  This drug quantity determination derived from the PSR's "conservative estimate" of the crack cocaine involved in the conspiracy, "based on testimony only," totaling 21.87 kilograms.  *See* White PSR ¶¶ 25 & n.4, 41 (explaining that Probation used "conservative estimates in calculating the amount of drugs" distributed during the conspiracy).  In addition, between December 1988 and October 1992, "law enforcement officials made numerous narcotics purchases, and seizures of drugs, from various members of the" First Street Crew, White PSR ¶ 35, which purchases and seizures were listed, by date, and amounted to 545.72 grams of cocaine base, *id.*  These additional amounts were "not included" in the total 21.87 kilogram figure.  *Id.*

Although White contested the PSR's estimate of 21.87 kilograms of cocaine base, on the ground that the PSR's calculation relied on evidence that "didn't say whether" the drugs were "powder or crack," Judge Greene rejected that assertion at the sentencing hearing, Sentencing Tr. (May 9, 1994) at 25:4-5, ECF No. 353, finding, "by a preponderance of the evidence," that the 21.87 kilogram estimate was "quite conservative," Sentencing Tr. (May 11, 1994) at 90:4-8.  He concluded that the PSR "used reasonable methods," *id.* at 90:6, that Probation's "decisions are supported by the record," *id.* at 90:6-7, and that the PSR "could have easily doubled the 21 kilos by using other reliable information" besides testimony at trial, *id.* at 90:9-11.

White's base offense level of 42 was then increased by eight levels: (1) two levels were added for White's possession of a dangerous weapon, under U.S.S.G. § 2D1.1(b)(1), White PSR

¶ 88, based on his "participat[ion] in the killing of" Williams, who was killed after being shot by White at close range, the recovery of a pistol with White's fingerprint on the magazine, and the testimony of co-conspirators who watched White "handle guns" throughout the conspiracy, Sentencing Tr. (May 9, 1994) at 38:17-39:1, 42:18-23; *see* White PSR ¶ 53; (2) four levels were added as a role adjustment, under U.S.S.G. § 3B1.1(a), since White was a "leader of" the First Street Crew's criminal activity, which "include[d] five or more persons," Sentencing Tr. (May 11, 1994) at 117:10, 14-16; *see* White PSR ¶ 90; and (3) two levels were added for obstruction of justice, under U.S.S.G. § 3C1.1, based on (a) the "clear and convincing evidence" that White killed a cooperating witness, Williams, Sentencing Tr. (May 9, 1994) at 43:4-7, 12-13, (b) White's warning to another member of the First Street Crew, Jeff Thomas, "not to cooperate with" the government's investigation, *id.* at 43:15-17; Sentencing Tr. (May 11, 1994) at 117:17-19; *see* White PSR ¶¶ 82, 91, and (c) suspicions that White was involved in the murder of three other witnesses whom White believed were cooperating with the government, *see* White PSR ¶ 82. Judge Greene explained that he did not take "into account" the latter suspicions about the three other murders since "none of that became part of" the trial record, but noted that "it is not farfetched to say that when you have . . . a brutal killing of an informer . . . other killings or other intimidation [were] involved particularly when some . . . witnesses came here obviously in fear and trembling," Sentencing Tr. (May 11, 1994) at 112:1-9.

White's total offense level added up to 50, but in accordance with U.S.S.G. § 5A, comment. (n.2), was capped at an offense level of 43. Sentencing Tr. (May 11, 1994) at 117:19-21; *see* White PSR ¶ 96. Combined with his criminal history category of I, since White had no prior adult convictions, White's sentencing range under the GUIDELINES MANUAL was life imprisonment. Sentencing Tr. (May 11, 1994) at 117:22-118:9; *see* White PSR ¶¶ 101, 128.

### (i)      White's Sentence

White was sentenced by Judge Greene to concurrent life sentences on the two conspiracy convictions in Counts 1 and 5, concurrent terms of 240 months' incarceration on Counts 6 and 7 for his distribution of a detectable amount of cocaine base, and a concurrent term of 480 months' incarceration on Count 18 for distribution of 5 grams or more of cocaine base, involving White's sale of 49.99 grams of crack cocaine on October 2, 1992. *See* White J&C at 2; White PSR ¶ 35.

### (ii)      White's Direct Appeal and Collateral Challenges

White's sentence has been reviewed on direct appeal and on collateral review multiple times. On direct appeal, the D.C. Circuit rejected his challenges to the admission of out-of-court statements made by Williams prior to his death, *White*, 116 F.3d at 911, the admission of narcotics expert testimony, *id.* at 921, the sufficiency of the evidence for his RICO conspiracy conviction, *id.* at 923, 926, the jury instructions on the RICO conspiracy and the drug conspiracy, *id.* at 925–26, the impartiality of the jury by which he was tried, *id.* at 928, and the propriety of sentencing him on both his drug conspiracy conviction and his RICO conspiracy conviction, *id.* at 930. The D.C. Circuit summarized White's offense conduct, stating that he "orchestrated the" First Street Crew's "drug operation and violent activities," *id.* at 909, involving "large amounts of crack," *id.*, and that there was "ample evidence" for the district court to conclude White "murdered" Williams, *id.* at 916.

Likewise, White's collateral attacks, under 28 U.S.C. § 2255, were denied. *See In re White*, Order, No. 18-3009, ECF No. 683 (D.C. Cir. Apr. 13, 2018) (denying White's petition for leave to file a successive § 2255 motion in which he sought to assert ineffective assistance of counsel); *In re White*, No. 16-3022, 2017 U.S. App. LEXIS 2125, ECF No. 654 (D.C. Cir. Feb. 6, 2017) (denying White's application for leave to file a second § 2255 motion, seeking retroactive application of holding in *Graham v. Florida*, 560 U.S. 48, 82 (2010), that a life

sentence without parole imposed on a juvenile for a non-homicide offense violated the Eighth

Amendment's Cruel and Unusual Punishments Clause); Mem. Order Dismissing Def.'s § 2255

Mot. (Dec. 23, 1999), ECF No. 479 (summarily denying White's first § 2255 motion, based on

claim that the government had an illegal "agreement with a cooperating witness who testified for

the prosecution at trial").[3]

In addition to these § 2255 collateral attacks, White has moved to reduce his term of

imprisonment, pursuant to 18 U.S.C. § 3582(c)(2), for retroactive application of a guideline

amendment, three times, in July 2002, March 2003, and July 2017, but each of those motions

was denied.  *See* Mem. Order (Jan. 18, 2018) at 3, ECF No. 675 (denying sentence reduction

based on Amendments 505 and 782 to the GUIDELINES MANUAL, because the amendments did

not "have the effect of lowering the defendant's applicable guideline range" (quoting U.S.S.G. §

1B1.10(a)(2)(B)); Mem. Order (May 29, 2003), ECF No. 561.  Judge James Robertson, the

presiding judge over the first two of those sentence reduction motions, denied White's

simultaneous challenge that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), should be applied to

his case and rejected his claim that a jury was required to find the 21.87 kilogram drug quantity

that led to his life sentence, because 18 U.S.C. § 3582(c)(2) was not an appropriate vehicle for

this challenge.  *See* Mem. Order (May 29, 2003) at 1.

White has served approximately 26.5 years of his life term of imprisonment.  White Mot.

at 7.  White concedes that his sentencing range under the GUIDELINES MANUAL today remains

life in prison, just as the time of his original sentence.  *Id.* at 11.  Nevertheless, White seeks a

---

[3]    White noted in briefing that "it may also be that a life sentence is unconstitutional under *Graham v. Florida*, 560 U.S. 48 (2010)," because even though he became an adult by the end of the conspiracy, he was a juvenile at the start.  White Mot. at 9 n.5.  The D.C. Circuit has already rejected White's § 2255 *Graham* challenge as "time-barred."  *In re White*, 2017 U.S. App. LEXIS 2125, at *1.  In any event, White expressly states that he does "not raise a" *Graham* "challenge in this proceeding."  White Mot. at 9 n.5.

reduction of his sentence, under Section 404 of the First Step Act, contending that he should now be subject to the penalties in 21 U.S.C. § 841(b)(1)(C), for which the maximum term of imprisonment is 20 years and the minimum term of supervised release is 3 years, since no drug quantity of 28 grams or more was proven to a jury beyond a reasonable doubt in 1994. *Id.* at 9. Accordingly, White seeks to have his sentence reduced to time served and 3 years of supervised release. *Id.* at 16.

### b.   Eric Hicks

Hicks' convictions for conspiring to distribute cocaine base and RICO conspiracy on Counts 1 and 5, and his three separate counts of distribution of cocaine base in Counts 8, 10, and 11, were grouped together, under U.S.S.G. § 3D1.2(d).  Hicks PSR ¶ 84.  His base offense level was 42, under U.S.S.G. §§ 2D1.1(a)(3), (c)(1), based on the finding that the conspiracy "involved 21 kilos or thereabouts."  Sentencing Tr. (May 11, 1994) at 132:10-12; *see* Hicks PSR ¶ 85.  Hicks joined White's objection that the PSR's estimate of 21.87 kilograms of cocaine base did not specify whether the quantities were crack or powder cocaine, *see* Sentencing Tr. (May 9, 1994) at 73:25–74:1-3, and also disputed responsibility for the full 21.87 kilogram cocaine base quantity, because certain amounts were sold, from 1988 to 1990, by a different organization than the First Street Crew, and because he was in jail for two months in the summer of 1991, *id.* at 74:4-15, 75:12-25.  Hicks also noted that a "minor part" of the 21.87 kilogram quantity was based on Williams' out-of-court statements, and objected to those small amounts of the total 21.87 kilogram quantity since he did not have an opportunity to cross-examine Williams, who had been murdered.  *Id.* at 74:16–75:5.  Judge Greene overruled these objections and concluded, based on the ample evidence supporting the PSR's drug quantity determination, that "Hicks was involved in the conspiracy from 1988 on," *id.* at 80:21-22, and that the 21.87 kilogram quantity

was "appropriately attributed to the conspiracy" and "also appropriately attributed to" Hicks, Sentencing Tr. (May 11, 1994) at 132:9-12.

Hicks' base offense level of 42 was increased by ten levels: (1) two levels were added for possession of a weapon, under U.S.S.G. § 2D1.1(b)(1), based on Hicks' possession of a loaded gun on multiple occasions during the conspiracy, Sentencing Tr. (May 11, 1994) at 132:19-133:1; Hicks PSR ¶¶ 58, 61, 86; (2) four levels were added as a role adjustment, under U.S.S.G. § 3B1.1(a), for Hicks' leadership role in "criminal activity with five or more persons" and being "in charge of the First Street Crew whenever . . . White was in jail or was otherwise occupied," Sentencing Tr. (May 11, 1994) at 132:13-18; *see* Hicks PSR ¶ 88; (3) two levels were added for obstruction of justice, under U.S.S.G. § 3C1.1, because Hicks "bribed" Michael Jackson, a First Street Crew member, "not to give information up to the grand jury" investigating Hicks for murder, by paying Jackson with money and crack cocaine, and offering to buy him an apartment, Sentencing Tr. (May 9, 1994) at 84:3–85:1; *see* Hicks PSR ¶¶ 69, 89; and (4) two levels were added, under U.S.S.G. § 3C1.2, because Hicks fled from law enforcement officers during his arrest, by speeding in a vehicle he was driving at over 80 miles per hour through several red lights, crashing into four cars during rush hour and then fleeing on foot into a stranger's home, Sentencing Tr. (May 11, 1994) at 133:4-7; Hicks PSR ¶¶ 71, 90.

Hicks' total offense level of 52 was capped at 43, pursuant to U.S.S.G. § 5A, comment. (n.2). Sentencing Tr. (May 11, 1994) at 133:7-8; *see* Hicks PSR ¶ 94. His criminal history category was III, "based on a prior conviction" for stealing a car, Sentencing Tr. (May 11, 1994) at 133:9-10; Hicks PSR ¶ 96, and the fact that he was charged in this federal criminal case "while on probation" in an unrelated D.C. Superior Court case, Sentencing Tr. (May 11, 1994) at 133:9-10; Hicks PSR ¶ 98. Thus, Hicks' total offense level of 43, combined with his criminal history

category of III, resulted in a sentencing range under the GUIDELINES MANUAL of life

imprisonment.  Sentencing Tr. (May 11, 1994) at 133:8-17; Hicks PSR ¶ 117.

### (i)      Hicks' Sentence

Hicks was sentenced to concurrent terms of life in prison on the two conspiracy

convictions in Counts 1 and 5, 240 months on Counts 8 and 10, involving a detectable amount of

cocaine base, and 480 months on Count 11, involving the sale of 5.426 grams of crack cocaine

on October 11, 1991, *see* Hicks PSR ¶ 34, followed by concurrent terms of 5 years of supervised

release on each count, *see* Hicks J&C at 1–3.

### (ii)      Hicks' Direct Appeal and Collateral Challenges

On direct review, the D.C. Circuit affirmed Hicks' convictions and sentence, rejecting his

challenges to the admission of Williams' out-of-court statements, *White*, 116 F.3d at 911, the

denial of his motion to sever his trial from the trial of his co-defendants, *id.* at 916, the admission

of narcotics expert testimony, *id.* at 921, the sufficiency of the evidence for the RICO conspiracy

conviction, *id.* at 925, the jury instructions on the drug conspiracy, *id.* at 926, the impartiality of

the jury by which he was tried, *id.* at 928, and the propriety of sentencing him on both his drug

conspiracy conviction and his RICO conspiracy conviction, *id.* at 930 & n.16.  The D.C. Circuit

highlighted that Hicks "took charge" of the First Street Crew when White was in jail, *id.* at 909,

and that "the independent evidence showing Hicks's role as a large-scale crack distributor was

substantial," *id.* at 916.  Hicks' sentence "became final" when his petition for a writ of certiorari

to the Supreme Court was denied.  *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002).

None of Hicks' subsequent collateral motions attacking his conviction and sentence,

under 28 U.S.C. § 2255, resulted in any relief.  *See United States v. Hicks*, 911 F.3d 623, 626,

628 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 2651 (2019) (affirming denial of Hicks' § 2255

motion, challenging enhancement for "Reckless Endangerment During Flight," under U.S.S.G. §

3C1.2, as "unconstitutionally void for vagueness," since defendant "procedurally defaulted" by failing to raise issue on direct appeal and failing to establish prejudice from application of § 3C1.2); Order, *United States v. Hicks*, No. 18-3020 (D.C. Cir. Sept. 19, 2018) (per curiam) (denying certificate of appealability of district court's denial of Hicks' constitutional challenge based on *Graham*, 560 U.S. at 48); Order, *United States v. Hicks*, No. 05-3167 (D.C. Cir. Feb. 24, 2006) (per curiam) (denying Hicks' challenge to his sentence as unconstitutional under *United States v. Booker*, 543 U.S. 220 (2005), because *Booker* does not apply retroactively); *Hicks*, 283 F.3d at 380 (denying Hicks' attempt to supplement his initial § 2255 motion with a claim based on *Apprendi*, 530 U.S. at 466); Order (Nov. 6, 2000), ECF No. 491 (denying Hicks' initial § 2255 motion asserting that government had an illegal agreement with a cooperating witness at trial, that trial judge was "hostile to" counsel, and that government failed to provide *Brady* material).  Notably, in September 2018, when affirming the denial of Hicks' request for a certificate of appealability, the D.C. Circuit noted that "to the extent [Hicks] asserts that his life sentence is unconstitutional because the drug quantity attributable to him was not submitted to the jury and proved beyond a reasonable doubt, [Hicks] has not cited a 'new rule of constitutional law' supporting this proposition, nor has he shown that any such rule was made retroactive by the Supreme Court."  Order at 2, *United States v. Hicks*, No. 18-3020 (D.C. Cir. Sept. 19, 2018) (per curiam).

Hicks' motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), for retroactive application of a guideline amendment also resulted in no relief.  *See* Mem. Order at 1 (Feb. 2, 2006), ECF No. 576 (denying motion for application of Amendment 505, "which lowered the maximum base offense level to 38 for a defendant who, before the amendment, would have been

assigned a base offense level of between 38 and 42 based on the weight of drugs involved," since "it made no difference to" Hicks' sentencing range under the GUIDELINES MANUAL).

Having served approximately 26.5 years of his original life sentence, Hicks Suppl. Mot. at 7, Hicks concedes that his sentencing range under the GUIDELINES MANUAL today remains life in prison, just as the time of his original sentence, *id.* at 10.  Nonetheless, he seeks a sentence reduction, pursuant to Section 404 of the First Step Act, claiming that he should now be subject to the penalties in 21 U.S.C. § 841(b)(1)(C), for which the maximum term of imprisonment is 20 years and the minimum term of supervised release is 3 years, since no drug quantity of 28 grams or more was proven to a jury beyond a reasonable doubt in 1994.  *See* Hicks Suppl. Mot. at 8. Hicks thus seeks a sentence of time served and 3 years of supervised release.  *Id.* at 2.

### c.     Ronald Hughes

Hughes' convictions for the cocaine base distribution conspiracy in Count 1, and three individual counts of distribution, or possession with intent to distribute, cocaine base in Counts 9, 12, and 13, were grouped together, under U.S.S.G. § 3D1.2(d).  Hughes Presentence Report ("Hughes PSR") ¶ 87, ECF No. 627-1.  His base offense level was 40, under U.S.S.G. §§ 2D1.1(a)(3), (c)(2), based on the PSR's attribution of responsibility to Hughes for 10.94 kilograms of cocaine base, a "pro rata portion of" the 21.87 kilograms of cocaine base distributed by the First Street Crew from the time Hughes joined the conspiracy in the summer of 1990. Sentencing Tr. (May 11, 1994) at 138:13-16; Hughes PSR ¶¶ 80, 88.  Judge Greene observed that the 10.94 kilogram amount reflected "about half of the rest of the conspiracy" and "was an appropriate and proper amount."  Sentencing Tr. (May 11, 1994) at 138:13-16; *see* Hughes PSR ¶ 80.  This quantity of 10.94 kilograms of cocaine base, therefore, was "a reasonable estimate . . . that could have been reasonably foreseeable by" Hughes "and to have been distributed by the conspiracy" during that time.  Sentencing Tr. (May 11, 1994) at 138:16-18.

Hughes objected to the 10.94 kilogram quantity, claiming "he was absent for seven months in 1990 and 1991," Sentencing Tr. (May 11, 1994) at 138:19-20, and any quantities in the PSR's estimate from that time period "should be deducted," *id.* at 138:20-21, such that he "should be held accountable, given those numbers, for 4.25 kilograms of cocaine," Sentencing Tr. (May 9, 1994) at 54:6-7.  Rejecting those objections, Judge Greene found that Hughes was "on the street selling" in the 1990 to 1991 time period, and even if the seven-month time period were "deducted," the "amount would still be over five kilos" and thus would not change Hughes' base offense level.  Sentencing Tr. (May 11, 1994) at 138:19-25–139:1.

Hughes' base offense level of 40 was increased by four levels: (1) two levels were added for possession of a firearm, under U.S.S.G. § 2D1.1(b)(1), based on Hughes' participation in shooting death of Williams and on "co-conspirator testimony" corroborating Hughes' possession of guns during the conspiracy, Sentencing Tr. (May 9, 1994) at 69:10-13; Sentencing Tr. (May 11, 1994) at 139:4-6; Hughes PSR ¶ 89; and (2) two levels were added for obstruction of justice, under U.S.S.G. § 3C1.1, because Hughes murdered Williams and threatened, while in D.C. jail, to "shank [] up" Dequette Barr, another member of the First Street Crew, when he heard that Barr planned to testify against Hughes at trial, Sentencing Tr. (May 9, 1994) at 69:14-19; Sentencing Tr. (May 11, 1994) at 139:5-6; Hughes PSR ¶¶ 76, 92.

Hughes' total offense level of 44 was capped at an offense level of 43, under U.S.S.G. § 5A, comment. (n.2).  Sentencing Tr. (May 11, 1994) at 139:7-8; Hughes PSR ¶ 97.  This total offense level, combined with Hughes' criminal history category of III, based on "several" prior "drug convictions," Sentencing Tr. (May 11, 1994) at 139:5-6, resulted in a sentencing range under the GUIDELINES MANUAL of life in prison, *id.* at 139:9-19; Hughes PSR ¶ 123.

### (i)      Hughes' Sentence

Hughes was sentenced to life imprisonment on the conspiracy conviction in Count 1, and concurrent terms of 240 months' imprisonment on Counts 9, 12, and 13 for distribution of a detectable amount of cocaine base, followed by concurrent terms of 5 years of supervised release on all counts.  Hughes J&C at 2, 3.

### (ii)     Hughes' Direct Appeal and Collateral Challenges

Hughes' sentence was affirmed on direct appeal by the D.C. Circuit, over Hughes' challenges to the admission of out-of-court statements by Williams, *White*, 116 F.3d at 911, the timing of the government's disclosure of its witness list and related *Brady* violations, *id.* at 918, limitations placed on his cross-examination of three government witnesses, *id.* at 919, the admission of narcotics expert testimony, *id.* at 921, the sufficiency of the evidence that Hughes joined the conspiracy after his eighteenth birthday, *id.* at 922, the jury instructions on the drug conspiracy, *id.* at 926, and the impartiality of the jury by which he was tried, *id.* at 928.  The D.C. Circuit highlighted the "ample evidence" that Hughes, with White, "murdered Williams." *Id.* at 916.

In October 2000, Judge Robertson granted Hughes' motion for a reduction of sentence, under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10, based on retroactive application of Amendment 505 to the Guidelines, which reduced the base offense level applicable for five to fifteen kilograms of cocaine base to 38.  *See* Order (Aug. 6, 2002) at 2, ECF No. 536; *see also* U.S.S.G. App. C, amend. 536 (eff. Nov. 1, 1995) (adding Amendment 505 to list of retroactive amendments).  This retroactive amendment had the effect of reducing Hughes' total offense level to 42, and combined with his criminal history category of III, produced a sentencing range under the GUIDELINES MANUAL of 360 months to life.  Order (Aug. 6, 2002) at 2.  Judge Robertson concluded, in granting this discretionary reduction, that Hughes' sentence on the conspiracy

conviction in Count 1 "should be reduced to 360 months," and left "all other provisions of his sentence" unchanged.  *Id.* at 1, 2.

At the same time, Hughes moved to vacate his sentence, under 28 U.S.C. § 2255, based on *Apprendi*, 530 U.S. at 466.  *See id.*  Judge Robertson denied Hughes' *Apprendi* challenge, concluding *Apprendi* was not retroactively available to Hughes since *Apprendi* was "not a watershed rule of procedure" that affected "the accuracy of the underlying convictions themselves."  *Id.* at 6.  Hughes' other efforts to collaterally attack or reduce his sentence have been unsuccessful.  *See* Mem. Order (Nov. 9, 2006) at 7–9, ECF No. 578 (denying Hughes' § 2255 claim of ineffective assistance of trial counsel); Order (Mar. 10, 2010) at 1–2, ECF No. 601 (denying Hughes' motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) for retroactive applications of Amendments 706 and 711, since these amendments did not lower his sentencing range under the GUIDELINES MANUAL).

Hughes completed his 360-month term of imprisonment on May 13, 2019 and is currently serving his concurrent 5-year terms of supervised release.  Hughes Reply at 1.  Hughes concedes that today, the bottom of his sentencing range under the GUIDELINES MANUAL remains 360 months.  Hughes Mot. at 8.  Even so, Hughes now seeks, pursuant to Section 404 of the First Step Act, a reduction of his supervised release terms from 5 to 3 years, Hughes Reply at 2, 14, claiming that he should now be subject to the penalties in 21 U.S.C. § 841(b)(1)(C), since no drug quantity was proven to a jury beyond a reasonable doubt in 1994, *id.* at 2.

### B.     Statutory Background

The Controlled Substances Act sets forth three statutory penalty ranges, of 10 years to life in prison, 5 to 40 years in prison, and up to 20 years in prison, "applicable to a drug offender depending primarily upon the kind and amount of drugs involved in the offense."  *Dorsey v. United States*, 567 U.S. 260, 266 (citing 21 U.S.C. §§ 841(b)(1)(A)–(C)).  At the time the

defendants were charged, convicted, and sentenced, and until 2010, the 10-years-to-life statutory penalty range was triggered by a drug trafficking offense involving 50 grams or more of cocaine base, 21 U.S.C. § 841(b)(1)(A)(iii) (1993), the 5-to-40-year range by a drug trafficking offense involving 5 grams or more of cocaine base, *id.* § 841(b)(1)(B)(iii) (1993), and the 0-to-20-year range by a drug trafficking offense involving only a detectable amount of cocaine base, *id.* § 841(b)(1)(C) (1993).  This penalty scheme treated "crack cocaine crimes as far more serious" than powder cocaine crimes, *Dorsey*, 567 U.S. at 266, "impos[ing] upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one one-hundredth that amount of crack cocaine," *id.* at 263.

"During the next two decades, the [U.S. Sentencing] Commission and others in the law enforcement community strongly criticized Congress' decision to set the crack-to-powder mandatory minimum ratio at 100–to–1." *Id.* at 268.  Thus, in 2010, well after the instant defendants' 1994 sentencings, Congress "accepted the Commission's recommendations . . . and enacted the" FSA into law, *id.* at 269, "reducing the crack-to-powder cocaine disparity from 100–to–1 to 18–to–1," *id.* at 264.  Specifically, FSA's section 2, titled "Cocaine Sentencing Disparity Reduction," provides, in full:

> (a) CSA.—Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended—
>> (1) in subparagraph (A)(iii), by striking "50 grams" and inserting "280 grams"; and
>> (2) in subparagraph (B)(iii), by striking "5 grams" and inserting "28 grams".
>
> (b) IMPORT AND EXPORT ACT.—Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended—
>> (1) in paragraph (1)(C), by striking "50 grams" and inserting "280 grams"; and
>> (2) in paragraph (2)(C), by striking "5 grams" and inserting "28 grams".

FSA, Pub. L. 111-220, § 2, 124 Stat. 2372. 2372 (2010).

The Supreme Court has summarized this statutory provision, stating that FSA's section 2(a) "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5–year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." *Dorsey*, 567 U.S. at 269.  Although the FSA's more lenient penalties for crack cocaine offenses were retroactively available to defendants who committed a drug offense prior to the FSA's effective date of August 3, 2010, but were sentenced for the offense after that date, *see id.* at 282, this new penalty regime did not apply to defendants sentenced prior to August 3, 2010, such as the defendants in this case, *see United States v. Swangin*, 726 F.3d 205, 207 (D.C. Cir. 2013).

Recently, in December 2018, however, Congress enacted Section 404 of the First Step Act to further the objective of the FSA by making sections 2 and 3 of the FSA retroactively available.  *See* First Step Act § 404.  Section 404, titled "Application of Fair Sentencing Act," provides in full:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Eligibility for relief under Section 404 is limited to defendants previously sentenced for "a covered offense," as defined in subsection (a), and not subject to the "limitations" in subsection (c). *Id.* §§ 404(a), (c). For eligible defendants, subsection (b) authorizes a court to exercise discretion to adjust the sentence by "impos[ing] a reduced sentence as if sections 2 and 3 of the [FSA] . . . were in effect at the time the covered offense was committed." *Id.* § 404(b).[4]

The defendants' pending motions request sentence reductions, based on the authorization in Section 404(b) to apply retroactively FSA's section 2. *See generally* White Mot; White Reply, ECF No. 705; White Suppl. Reply, ECF No. 708; Hicks Suppl. Mot.; Hicks Reply, ECF No. 706; Hicks Suppl. Reply, ECF No. 709. Hughes Mot.; Hughes Reply. The government disputes that the defendants are eligible for any sentence reductions under Section 404, on the ground that White, Hicks, and Hughes were not previously sentenced for a "covered offense," as defined in Section 404(a). *See generally* Gov't's Resp. (White), ECF No. 703; Gov't's Resp. (Hicks), ECF No. 702; Gov't's Resp. (Hughes), ECF No. 704. Even if the defendants are eligible, the government opposes any reduction of their sentences as "not warrant[ed]" and "inappropriate." Gov't's Resp. (Hicks) at 30, 31; *accord* Gov't's Resp. (White) at 29, 31; Gov't's Resp. (Hughes) at 28, 29.

Briefing on the defendants' motions was completed on May 29, 2019 and these motions are now ripe for resolution.

---

[4]   The First Step Act's Section 404 also made retroactive FSA's section 2(b), which reduced drug penalties for importation and export offenses, and FSA's section 3, which eliminated the mandatory minimum sentence for simple possession of crack cocaine. FSA §§ 2(b), 3; *see Dorsey*, 567 U.S. at 269 (explaining that FSA "also eliminated the 5–year mandatory minimum for simple possession of crack"). Neither FSA's sections 2(b) or 3 are at issue here since none of the three defendants was convicted of importation offenses or simple possession.

## II.   DISCUSSION

White, Hicks, and Hughes' pending motions for reduced sentences under Section 404 raise several key questions with which district courts across the country are grappling and arriving at different answers about the scope of eligibility and available relief as well as the applicability of extant constitutional rules articulated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013).   Here, the government contends that the defendants are ineligible for any relief and, thus, their motions should be "summarily denied."   Gov't Resp. (White) at 10; *accord* Gov't Resp. (Hicks) at 1; Gov't Resp. (Hughes) at 1.   The Court disagrees, finding instead that the defendants are eligible for relief under Section 404. Nonetheless, White and Hicks are not entitled to the reductions they seek to time-served sentences, nor is Hughes entitled to a reduced supervised release term, because any reduction is circumscribed by 18 U.S.C. § 3582(c)(1)(B) and the express terms of the Section 404, and neither FSA nor the First Step Act operate to apply retroactively the *Apprendi/Alleyne* line of cases barring reliance on judicial factfinding to increase the statutory penalty for a crime beyond those facts found by a jury beyond a reasonable doubt or admitted by the defendant ("*Apprendi/Alleyne* rule").

### A.   Defendants Are Eligible For Relief Under the First Step Act's Section 404.

The parties agree that the defendants must meet the eligibility requirements under Section 404 to obtain a discretionary sentence reduction but dispute whether their convictions are "covered offenses" within the meaning of the First Step Act's Section 404(a).   *See* White Mot at 2; Gov't Resp. (White) at 12; Hicks Suppl. Mot at 2; Gov't Resp. (Hicks) at 12; Hughes Mot. at 2; Gov't Resp. (Hughes) at 11.   For the reasons discussed below, White, Hicks, and Hughes are eligible for sentence reductions under Section 404.

The defendants here are eligible for sentence reduction relief under Section 404 if they have been previously sentenced "for a covered offense." First Step Act § 404(b).[5] Eligibility thus turns on the meaning of a "covered offense," which is defined in Section 404(a) to "mean[] a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . ., that was committed before August 3, 2010." *Id.* § 404(a). A plain reading of this text establishes that eligibility for Section 404 relief has two straightforward criteria: (1) the defendants must have been previously sentenced for "a violation of a Federal criminal statute . . . that was committed before August 3, 2010," and (2) the "statutory penalties" for the "Federal criminal statute" applied to the defendants at sentencing were modified by FSA's section 2 or 3.

White, Hicks, and Hughes were sentenced on Count 1 for federal statutory violations occurring prior to August 3, 2010, under 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii), a penalty provision modified by FSA's section 2. Consequently, these defendants are clearly eligible under Section 404(a) for reductions of their sentences. For the same reason, White and Hicks are eligible for reductions of their sentences on Count 5, which also applied the penalty under 21 U.S.C. § 841(b)(1)(A)(iii), and on Counts 11 and 18, which applied the penalty under 21 U.S.C. § 841(b)(1)(B)(iii), both of which penalty provisions were modified by FSA's section 2.[6]

---

[5]     Eligibility for Section 404 relief is also limited "if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010," or "if a previous motion made under [Section 404] to reduce the sentence was . . . denied after a complete review of the motion on the merits." First Step Act § 404(c). These limitations do not apply to White, Hicks, or Hughes. *See* White Mot. at 3 n.1 ("Neither limitation applies in this case."); *accord* Hicks Suppl. Mot. at 3 n.1; Hughes Mot. at 3 n.1; *see also generally* Gov't's Resp. (White); Gov't's Resp. (Hicks); Gov't's Resp. (Hughes).

[6]     By contrast, because the statutory penalties for 21 U.S.C. § 841(b)(1)(C) were not modified by FSA's sections 2 or 3, the defendants' convictions for violations of that statutory provision do not trigger FSA's sections 2 or 3 or eligibility for a sentence reduction under the First Step Act's Section 404. Thus, White is not eligible for sentence reductions for his convictions on Counts 6 and 7, and Hicks on Counts 8 and 10, or Hughes on Counts 9, 12 and 13. *See United States v. Duggan*, 771 F. App'x 261 (4th Cir. 2019) (unpublished) ("The offense for which [the defendant] was convicted and sentenced - possession with intent to distribute a quantity of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(C) - was not modified by section 2 or 3 of the 2010 FSA. The district court thus lacked jurisdiction to reduce [the defendant's] sentence under the 2018 FSA." (citing 18 U.S.C. § 3582(c)(1)(B))).

The government reads Section 404(a)'s definition of "covered offense" differently. Instead of a straightforward reading of the provision, the government contends that to be eligible, the defendant's "violation" must involve a quantity of crack cocaine that would have triggered a different statutory penalty under FSA's sections 2 or 3.  Gov't Resp. (White) at 23; *accord* Gov't Resp. (Hicks) at 23; Gov't Resp. (Hughes) at 15.  In other words, the defendants' eligibility under the definition of "covered offense" is "determined based on the actual [drug] quantity involved in the offense."  Gov't Resp. (White) at 25; *accord* Gov't Resp. (Hicks) at 25; Gov't Resp. (Hughes) at 23.  Since the defendants' convictions on Count 1 involved a conspiracy to distribute 21.87 kilograms of crack cocaine, as to White and Hicks, and 10.94 kilograms of crack cocaine as to Hughes—drug quantities exceeding the current 280 grams to trigger the 10-year mandatory minimum, under 21 U.S.C. § 841(b)(1)(A)(iii)—the government points out that "the statutory penalties for" the defendants' violations on Count 1 "remain the same."  Gov't Resp. (White) at 12–13; Gov't Resp. (Hicks) at 13–14; Gov't Resp. (Hughes) at 12.  With no change in statutory penalties under FSA's section 2, the defendants' Count 1 convictions do not fall within Section 404(a)'s definition of "covered offense," rendering the defendants ineligible for any relief.  Gov't Resp. (White) at 12–13; Gov't Resp. (Hicks) at 13–14; Gov't Resp. (Hughes) at 12.

Applying the same reasoning, the government asserts that White and Hicks are ineligible on Count 5, because a violation of 18 U.S.C. § 1962(d) predicated on Count 1, and thereby subject to the maximum life term of imprisonment provided in 21 U.S.C. § 841(b)(1)(A)(iii), involved the same 21.87 kilograms of crack cocaine in Count 1.  Gov't Resp. (White) at 13; Gov't Resp. (Hicks) at 10 n.9, 13.  Similarly, under the government's theory, White is ineligible for relief on Count 18, for violating of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii),

because the quantity involved was 49 grams, and, although the FSA "increased the threshold crack quantity for" a § 841(b)(1)(B)(iii) "offense to 28 grams," the drug quantity for White's "violation" exceeds 28 grams, and the "statutory penalties" for that "violation" remain punishable under § 841(b)(1)(B)(iii).  Gov't's Resp. (White) at 13.[7]  The government is wrong on this issue.

The government grounds this drug-quantity-driven eligibility theory in the text of Section 404(a), explaining that "the eligibility inquiry" depends on whether the statutory penalties for the "violation" that the defendant committed were modified by the FSA.  Gov't's Resp. (White) at 14; Gov't's Resp. (Hicks) at 15; Gov't's Resp. (Hughes) at 13.  This interpretation construes the restrictive phrase, "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010" ("Restrictive Clause"), as modifying the word "violation" and not the closer noun phrase "Federal criminal statute."  Put another way, the government reads Section 404(a) as defining the term "covered offense" to mean "a violation of a Federal criminal statute, the statutory penalties for [*that violation*] were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . ., that was committed before August 3, 2010."  *See* First Step Act § 404(a) (alteration and emphasis added).

Premised on that reading of Section 404(a), the government proceeds further to interpret the phrase "violation of a Federal criminal statute" to refer to a defendant's actual conduct, i.e., the actual quantities of crack cocaine involved in a defendant's offense.  Gov't's Resp. (White) at 14; Gov't's Resp. (Hicks) at 15; Gov't's Resp. (Hughes) at 14.  As a necessary corollary to that interpretation, the government contends that the actual drug quantities originally applied at

---

[7]     By contrast, the government concedes that under its theory, Hicks is eligible for a reduction of his sentence on Count 11, in violation of §§ 841(a)(1), 841(b)(1)(B)(iii), because for this "violation," "[t]he PSR reflects that the amount [Hicks] sold was just over 5 grams, but not 28 grams or more," meaning he would now qualify for the 0-to-20 year range provided in § 841(b)(1)(C).  Gov't's Resp. (Hicks) at 14 n.11.

sentencing may be considered, notwithstanding that those quantities were not found by a jury beyond a reasonable doubt, because the *Apprendi/Alleyne* rule does not apply.  *See* Gov't's Resp. (White) at 13; Gov't's Resp. (Hicks) at 14; Gov't's Resp. (Hughes) at 13.  Hence, the government's narrow interpretation of "covered offense" would eliminate from eligibility for sentencing reduction relief under Section 404(a), defendants whose sentencing exposure would be no different under FSA's Sections 2 or 3 in reliance on the drug quantities judicially found at the original sentencing.  Gov't's Resp. (White) at 13; Gov't's Resp. (Hicks) at 13; Gov't's Resp. (Hughes) at 12.  This would restrict eligibility to defendants whose offense conduct involved "over 5 grams, but not 28 grams or more," of cocaine base, Gov't's Resp. (Hicks) at 14 n.11, or offense conduct involving over 50 grams, but not 280 grams or more of cocaine base.

The government's multi-layered construction of the "covered offense" definition in Section 404(a) is inconsistent with both the statutory text and normal canons of statutory interpretation.  Moreover, as discussed more fully *infra*, in Part II.C., the government's reading tangles two separate issues regarding the scope of eligibility and application of *Apprendi* and *Alleyne* to sentences originally imposed prior to the Supreme Court's articulation of the constitutional prohibition on use of judicial factfinding, including about drug quantities, that are not found by a jury beyond a reasonable doubt or admitted by the defendant to increase the severity of the authorized penalties.  Importing the debate over whether the *Apprendi/Alleyne* rule should apply to an analysis of eligibility and the proper construction of Section 404(a) is not only misplaced but also unnecessary.  The "covered offense" definition looks directly to whether the statute of conviction was modified by FSA's section 2 or 3, not a drug quantity finding, making the eligibility determination distinct from any subsequent determinations of whether a

reduced sentence is available to a defendant under Section 404(b) and whether, if available, a

sentencing reduction should be granted as a matter of discretion.

To unpack why the government's drug-quantity-driven interpretation of Section 404(a)'s

definition of "covered offense" is wrong requires a "holistic endeavor" to "determine[] meaning

by looking not to isolated words, but to text in context, along with purpose and history."  *Gundy*

*v. United States*, 139 S. Ct. 2116, 2126 (2019) (internal quotations marks and citations omitted).

In this regard, the government's drug quantity approach "misreads the text of the First Step Act,

undermines the purpose of the Act, and is inconsistent with the decisions of the vast majority of

courts that have decided this issue."  *United States v. Rose*, 379 F. Supp. 3d 223, 228 (S.D.N.Y.

2019).[8]  Each of these points is discussed in turn.

### 1.     *The Text of Section 404(a)*

A close textual analysis of Section 404(a) shows that the government's starting

premise—that the Restrictive Clause modifies the noun "violation" and not the closer noun

phrase "Federal criminal statute"—is incorrect for three reasons: (1) the nearest-reasonable-

referent canon counsels that the Restrictive Clause modifies the closer noun phrase "Federal

criminal statute" and not the more distant word "violation"; (2) the government's reading would

effectively render superfluous the words "Federal criminal statute" and "statutory" in Section

404(a); and (3) the past tense of the verb phrase "were modified" in Section 404(a) confirms that

---

[8]     Although *Rose*'s reasoning on the proper interpretation of Section 404(a)'s definition of "covered offense" is persuasive and relied on here, *Rose*'s application of Section 404 is not adopted entirely.  For instance, in *Rose*, the court concluded that "the scope of a sentencing proceeding authorized by the First Step Act is not constrained by § 3582(c)(1)(B), to the extent it is applicable."  *Rose*, 379 F. Supp. 3d at 232.  In addition, the court reasoned that since the Second Circuit had already held at the time of the *Rose* defendants' original sentencings that "mandatory minimum sentences can only be predicated on facts found by a jury beyond a reasonable doubt or admitted by the defendant," *id.* at 230–31, the *Apprendi/Alleyne* rule continued to apply in the subsequent Section 404 proceeding, *id.*  For the reasons discussed *infra*, in Parts II.B and C, these other holding in *Rose* are not followed here.

the Restrictive Clause modifies the phrase "Federal criminal statute" and not the word

"violation."

First, under the nearest-reasonable-referent canon, "[w]hen given its most natural

reading," the Restrictive Clause modifies the nearer noun phrase "Federal criminal statute," and

not the more distant word "violation."  *Rose*, 379 F. Supp. at 228; *see* First Step Act § 404(a)

(defining "covered offense" to "mean[] a violation of a Federal criminal statute, the statutory

penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . .").

"Because '[w]ords are to be given the meaning that proper grammar and usage would assign

them, . . . the rules of grammar govern statutory interpretation unless they contradict legislative

intent or purpose." *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (first alteration in original)

(internal quotation marks and citations omitted).  Relevant to this case, "ordinarily, and within

reason, modifiers and qualifying phrases attach to the terms that are nearest." *Grecian

Magnesite Mining, Indus. & Shipping Co., SA v. Comm'r of IRS*, 926 F.3d 819, 824 (D.C. Cir.

2019); *see also Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (applying "the grammatical 'rule of

the last antecedent,' according to which a limiting clause or phrase . . . should ordinarily be read

as modifying only the noun or phrase that it immediately follows"); *Jama v. Immigration &

Customs Enf't*, 543 U.S. 335, 343 (2005) (same) (quoting *Barnhart*, 540 U.S. at 26).  Applying

this nearest-reasonable-referent canon, sometimes "label[ed]" the "rule of the last antecedent,"

*Grecian*, 926 F.3d at 824, the Restrictive Clause modifies the immediately preceding noun

phrase "Federal criminal statute," *see id.* ("Labels aside, the point is the same: ordinarily, and

within reason, modifiers and qualifying phrases attach to the terms that are nearest.").

Second, on the government's reading that the Restrictive Clause modifies "violation," the

words "Federal criminal statute" and "statutory" in Section 404(a) become superfluous.

"Congress could have straightforwardly legislated that result by omitting from § 404(a) the phrase 'Federal criminal statute,' which is already implied by the reference to" sections 2 and 3 of the FSA, "and the adjective 'statutory' before the noun 'penalties.'" *Rose*, 379 F. Supp. 3d at 228. Had Congress written Section 404(a) that way, the definition of "covered offense" would read to mean "a violation, the penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *See id.* Instead, Congress "inserted two otherwise unnecessary references to federal statutes, making clear that eligibility is determined by the statute(s) underlying the defendant's conviction and penalty, not the defendant's offense conduct." *Id.*

The government counters that determining eligibility based on the statute underlying a defendant's conviction and penalty does not account for the word "violation," and that word demonstrated Congress's intention to emphasize the "actual violation" a defendant "committed." *See* Gov't's Resp. (White) at 15 ("Congress intended courts assessing eligibility to take a case-specific approach focusing on the actual violation at issue."); *accord* Gov't's Resp. (Hicks) at 16; Gov't's Resp. (Hughes) at 15. The word "violation," however, still retains the meaning the government gives that word when the Restrictive Clause is read to modify the noun phrase "Federal criminal statute." Section 404(a)'s definition of "covered offense" tethers eligibility to the statute a defendant was found actually to have violated when sentence was imposed. In fact, assessing eligibility based on the "actual" statutory violation for which a sentence was imposed is more consistent with an "actual violation" than the government's position, which requires taking into account drug quantities and hypothesizing what statutory violation the defendant could have been found to have violated had FSA's sections 2 or 3 been in effect. Thus, the government's point that Congress emphasized the "actual violation" committed is perfectly

consistent with reading the Restrictive Clause to modify the word "Federal criminal statute" and, in fact, undercuts the government's own interpretation.

Finally, the government overlooks the past tense of the verb phrase "were modified" in the Restrictive Clause. *See Gundy*, 139 S. Ct. at 2127 (analyzing Congress's choice of "verb tense" to discern the meaning of a statute); *United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). The past tense of the phrase "were modified" corroborates that the Restrictive Clause cannot modify the word "violation" since that interpretation would narrow the class of defendants newly able to obtain the benefit of FSA's more lenient penalties for crack cocaine offenses, through Section 404, to a class of none. On the government's reading of Section 404(a), a defendant must have been sentenced for a "violation" that was "committed before August 3, 2010," and the statutory penalties for this pre-August 3, 2010 "violation" must have been "modified" by FSA. The only type of "violation" meeting these criteria would be one committed by a defendant convicted prior to August 3, 2010, but not sentenced by that date, because prior to Section 404's enactment, that is the only circumstance in which the FSA was retroactively available, under the FSA itself. *See Dorsey*, 567 U.S. at 273 ("Congress intended the [FSA's] more lenient penalties to apply to those offenders whose crimes preceded August 3, 2010, but who are sentenced after that date."); *Swangin*, 726 F.3d at 207 ("[B]ecause [the defendant] was convicted and sentenced before the [FSA's] August 3, 2010 effective date, he cannot benefit from retroactive application of the [Act's new] mandatory minimums."). Consequently, the government's position results in class of zero defendants who are newly able to receive, through Section 404, consideration for FSA's more lenient penalties for crack cocaine offenses. That absurd result cannot be the proper interpretation of Section 404(a). "Rather, the only 'statutory penalties' that the [FSA] could have

modified were the crack-cocaine penalties provided in the Controlled Substances Act." *Rose*, 379 F. Supp. 3d at 229.

In addition to the government's incorrect reading of the Restrictive Clause, the government's theory, that a defendant is only eligible for consideration of relief under Section 404(a) if the statutory penalties triggered by his actual drug quantity would be different under FSA, is undermined by Congress's deliberate choice to define eligibility differently than the U.S. Sentencing Commission's policy statement at U.S.S.G. § 1B1.10(a)(2)(B). The Supreme Court considered the Commission's policy statement in *Dillon v. United States*, 560 U.S. 817 (2010), observing that eligibility for application of a retroactive guideline amendment is limited to "those whose sentence was based on a sentencing range subsequently lowered by the Commission." Gov't Resp. (White) at 19 (quoting *Dillon*, 560 U.S. at 826); *accord* Gov't Resp. (Hicks) at 19; Gov't Resp. (Hughes) at 18. The government, relying on that observation, asserts, "The First Step Act solely calls for the Court to determine whether the statutory penalties would have been different based on the 'violation' the defendant 'committed.'" Gov't Resp. (White) at 19; *accord* Gov't Resp. (Hicks) at 19; Gov't Resp. (Hughes) at 18.

The problem in the government's reasoning is that unlike the Sentencing Commission's policy statement, which expressly excludes from eligibility for relief any defendant for whom the retroactive guideline amendment "does not have the effect of lowering the defendant's applicable guideline range," U.S.S.G. § 1B1.10(a)(2)(B), Section 404(a)'s definition of "covered offense" contains no such express exclusion tying eligibility only to when the FSA would have the effect of lowering the defendant's actual sentence. Instead, Section 404(a) focuses only on whether FSA's section 2 or 3 modified the statute of conviction and penalty. This highlights that Congress defined eligibility in the "covered offense" definition in Section 404(a) differently than

the criterion in U.S.S.G. § 1B1.10(a)(2)(B), limiting the relevancy, if any, of both U.S.S.G. §

1B1.10(a)(2)(B) and *Dillon*'s observation about this policy statement in interpreting the

definition of "covered offense" in Section 404(a).

### 2.     *The Purpose of Section 404*

The purpose of Section 404 confirms the textual analysis above.  "[B]oth the Fair

Sentencing Act and the First Step Act have the remedial purpose of mitigating the unfairness

created by the crack-to-powder cocaine ratio."  *Rose*, 379 F. Supp. 3d at 229.  The statute

accomplishes this remedial purpose by affording discretion to courts to reduce the sentences of

those defendants sentenced prior to the FSA, upon review of the circumstances of an individual

case.  *See* First Step Act §§ 404(b), (c).  Indeed, Congress intended, through Section 404, to

address the "inflexible mandatory minimum sentences" that did not "allow judges to distinguish

between drug kingpins, who should be [the] focus when it comes to criminal penalties, and lower

level offenders."  164 CONG. REC. S7639-03, S7644 (daily ed. Dec. 17, 2018) (statement of Sen.

Durbin); *see also* 164 CONG. REC. S7745-01, S7748 (daily ed. Dec. 18, 2018) (statement of Sen.

Klobuchar) ("Significantly, this bill will not automatically reduce any one person's prison

sentence.  Instead, the bill simply allows people to petition courts . . . for an individualized

review based on the particular facts of their case."); 164 CONG. REC. S7753-01, S7756 (statement

of Sen. Nelson) ("This legislation will allow judges to do the job that they were appointed to

do—to use their discretion to craft an appropriate sentence to fit the crime.").

In light of this remedial purpose, Section 404(a)'s eligibility requirement "should be

construed in favor of broader coverage," *Rose*, 379 F. Supp. 3d at 229, tied to the statute

underlying a defendant's conviction and penalty, *see id.*  As noted, the government's position,

keyed to drug quantity, limits eligibility only to those defendants responsible for drug trafficking

offenses involving more than 50 grams but less than 280 grams of crack cocaine, or more than 5

grams but less than 28 grams of crack cocaine.  This narrow construction of eligibility

contravenes the remedial purpose of the statute to have courts take a second look at the sentences

for those defendants sentenced prior to the FSA.  Furthermore, to the extent the statute's text and

purpose are ambiguous—and they are not—reading the statute to extend eligibility to a broader

class of defendants comports with the rule of lenity's "teaching that ambiguities about the

breadth of a criminal statute should be resolved in the defendant's favor."  *United States v.

Davis*, 139 S. Ct. 2319, 2333 (2019).

      The government challenges this broad interpretation of eligibility as turning Section

404's "goal on its head" because rooting eligibility in a defendant's statute of conviction "giv[es]

earlier crack defendants" seeking reductions under Section 404 a lower penalty range that was

not available to "later crack defendants" sentenced under the FSA itself, creating a "mass

disparity" by requiring courts to impose reduced sentences "untethered to any actual facts."  *See,

e.g.*, Gov't's Resp. (White) at 17, 23 (quoting *United States v. Blocker*, 2019 WL 2051957, at *5

(N.D. Fla. Apr. 25, 2019)); *accord* Gov't's Resp. (Hicks) at 17, 18, 23; Gov't's Resp. (Hughes)

at 16, 17, 22.  As support, the government observes that if the defendants here "were resentenced

based on the fiction that" their convictions on Count 1, for a conspiracy to distribute of 21.87

kilograms of crack cocaine, as to White and Hicks, and 10.94 kilograms as to Hughes, "involved

only a 'detectable' [amount] of crack cocaine," their "sentencing exposure would be far less than

that faced by everyone charged with the same crime after" the FSA, since the Court would need

to "blind" itself to "the actual quantity of crack involved in the defendants' offenses."  Gov't's

Resp. (White) at 15, 17; Gov't's Resp. (Hicks) at 16, 17; Gov't's Resp. (Hughes) at 15, 16.

      The government's argument that eligible Section 404 defendants could be subject to

lower penalty ranges than defendants subject to the FSA suffers a fatally flawed premise largely

because the government tangles the application of the *Apprendi/Alleyne* rule with its interpretation of Section 404(a).  More precisely, the government's "mass disparity" argument puts the proverbial cart before the horse by incorrectly assuming that if a defendant is eligible for a sentence reduction under Section 404(a), then the actual quantities of drugs involved in a defendant's violation must be ignored, based on *Apprendi* and *Alleyne*, when exercising discretion under Section 404(b) to impose a reduced sentence as if FSA's sections 2 and 3 were in effect at the time of the covered offenses.  As discussed *infra* in Part II.C, reading Section 404(a) to extend eligibility for a discretionary sentence reduction to defendants whose offense conduct involved judicial factfinding of substantial quantities of crack cocaine does not require application of the *Apprendi/Alleyne* rule and does not strip a court of discretion either to reduce, or decline to reduce, a defendant's sentence, based on that offense conduct.  *See* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").  Thus, the "mass disparity" that the government fears does not follow from a threshold eligibility determination.[9]

### 3.	*The Weight of Persuasive Authority*

Finally, the "weight of persuasive authority" supports reading Section 404(a) and determining eligibility by reference to the statute underlying a defendant's conviction and penalty.  *Rose*, 379 F. Supp. 3d at 230 (collecting district court cases reaching this same conclusion); *see also United States v. Martin*, No. 03-CR-795 (ERK), 2019 WL 2571148, at *2 (E.D.N.Y. June 20, 2019) ("[I]t appears a majority of district courts . . . have read the statute

---

[9]	At the same time, disparities in sentences between defendants subject to Section 404 of the First Step Act and those defendants sentenced on or after August 3, 2010 under the FSA will likely arise since the latter defendants had a plenary sentencing hearing at which *Apprendi* and its progeny applied.  As discussed *infra* in Parts II.B, C, and D, Section 404 is not such a plenary sentencing hearing and, further, is silent as to application of extant constitutional jurisprudence on the Sixth Amendment right to a jury trial in this sentence-modification proceeding. Sentencing disparities may—and perhaps should—be considered, however, in deciding whether to exercise discretion to grant a sentence reduction under the First Step Act.

differently" than the government (collecting cases)).  "While a small number of courts in earlier decisions have adopted the government's interpretation with respect to eligibility determinations, those cases remain outliers."  *United States v. Lutcher*, No. CR 03-338, 2019 WL 3006414, at *3 (E.D. La. July 10, 2019).

*      *      *

Accordingly, since the statutory penalties for each of the statutes underlying the defendants' convictions on Counts 1, 5, 11, and 18 were modified by FSA's section 2, the defendants were sentenced for "covered offense[s]" under Section 404(a) and are eligible for review of their sentences, under Section 404(b), to determine whether and to what extent a sentence reduction is warranted.

### B.       The Nature of Section 404 Sentence Reduction Proceedings

Next, the defendants urge that a proceeding under Section 404 for eligible defendants is a "freestanding remedy" that authorizes imposition of a reduced sentence "independent" of any direction otherwise in 18 U.S.C. § 3582(c).  White Reply at 11; Hicks Reply at 10; Hughes Reply at 10.  This statute provides, in relevant part, that "[t]he court may not modify a term of imprisonment once it has been imposed except that—[] in any case— . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." 18 U.S.C. § 3582(c)(1)(B).  Even if § 3582(c)(1)(B) were applicable, the defendants posit this would be "immaterial" since that statute "does not limit the relief afforded under the First Step Act in any way," such that Section 404 provides "broad . . . resentencing authority," including entitling the defendants to be present at any sentence modification hearing.  White Mot. at 8; White Reply at 11, 12; *accord* Hicks Suppl. Mot. at 8; Hicks Reply at 10, 11; Hughes Mot. at 7; Hughes Reply at 11, 12.  The defendants are wrong.

The clear statutory direction from 18 U.S.C. § 3582(c) is that "[t]he court may not modify a term of imprisonment once it has been imposed," unless one of the exceptions in § 3582(c) applies.  Consequently, the exception at § 3582(c)(1)(B), which permits a modification "to the extent otherwise expressly permitted by statute," serves as the vehicle for this proceeding under Section 404.  Moreover, contrary to the defendants' assertions, this means that the defendants are entitled to adjustments in their otherwise final sentences only as expressly authorized in Section 404, and are not entitled to a plenary resentencing hearing, at which the defendants are present.

### 1.    *First Step Act Section 404 Proceedings Are Subject to 18 U.S.C. § 3582(c)(1)(B).*

"Courts have reached different conclusions on the open question of whether Section 404(b) motions are governed by 18 U.S.C. § 3582(c)."  *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *5 (D.D.C. June 27, 2019) (acknowledging the division but declining to resolve the issue).  Section 3582(c) states plainly that "[t]he court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon*, 560 U.S. at 819 ("A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" (quoting § 3582(c)); *Pepper v. United States*, 562 U.S. 476, 502 n.14 (2011) ("Once imposed, a sentence may be modified only in very limited circumstances." (citing § 3582(c)). This "rule of finality," however, "is subject to" the "narrow exceptions" set forth in § 3582(c). *Freeman v. United States*, 564 U.S. 522, 526 (2011) (plurality), *holding modified in other respects by Hughes v. United States*, 138 S. Ct. 1765 (2018).

Those "narrow exceptions" authorizing modification of an otherwise final federal sentence include when the Director of the Bureau of Prisons or a defendant has moved for compassionate release, 18 U.S.C. § 3582(c)(1)(A), when a defendant was sentenced "to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing

Commission," *id.* § 3582(c)(2), or "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," *id.* § 3582(c)(1)(B).  In enacting § 3582(c), Congress sought to make clear that "a court may not modify a sentence," but included these exceptions as "safety valves," to "assure the availability of specific review and reduction of a term of imprisonment" in "particularly compelling situations."  S. Rep. No. 98-225, at 121 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3304.

Here, the only one of § 3582(c)'s narrow exceptions applicable is that authorization to modify the defendants' sentences must be "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); S. Rep. No. 98-225, at 121 ("Subsection (c)(1)(b) simply notes the authority to modify a sentence if modification is permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.").  The statute authorizing a modification of the defendants' sentences in this case, of course, is the First Step Act's Section 404, which must be read to operate through the exception at § 3582(c)(1)(B).  *See Duggan*, 2019 WL 2511871, at *1 (affirming application of 18 U.S.C. § 3582(c)(1)(B) in a Section 404 proceeding).

Indeed, Section 404 contains no provision making § 3582(c)'s rule of finality inapplicable, and Section 404 was enacted against the backdrop of § 3582(c).  *See United States v. Barber*, No. CR 0:09-207-04 (CMC), 2019 WL 2526443, at *3 (D.S.C. June 19, 2019) (noting the "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination" (quoting *United States v. Fausto*, 484 U.S. 439, 452-53 (1988))).  To construe Section 404 to operate independently would inappropriately render the statute incompatible with § 3582(c), by abrogating § 3582(c)'s plain instruction that "[t]he court may not modify a term of imprisonment once it has been imposed," unless one of the exceptions in § 3582(c) applies.

Furthermore, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Gundy*, 139 S. Ct. at 2126 (internal quotation marks and citation omitted). Congressional intention that Section 404 be read in conjunction with, rather than independent of, § 3582(c) is apparent from a review of the First Step Act as a whole. Indeed, the First Step Act's Section 603 amended § 3582(c)(1)(A)'s exception to § 3582(c)'s rule of finality for compassionate release to allow a defendant, in certain circumstances, to "bring a motion on [his own] behalf." First Step Act § 603. Section 603 thus amended the same subsection and even paragraph of § 3582(c) that the defendants deny applies here.

Moreover, Section 404 appears in "Title IV" of the First Step Act, titled "Sentencing Reform," and that Title's provisions demonstrate Congress's intention to maintain the finality of sentences already imposed. For example, Section 401, to "reduce and restrict enhanced sentencing for prior drug felonies," and Section 403, to clarify 18 U.S.C. § 924(c)'s penalty provisions, apply to "any offense that was committed before the" First Step Act's enactment, "if a sentence for the offense" had "not been imposed" by that date. First Step Act §§ 401(c), 403(b). Similarly, Section 402, broadening the availability of existing safety valve relief under 18 U.S.C. § 3553, applies "only to a conviction entered on or after the date of enactment of" the First Step Act. First Step Act § 402. Sections 401, 402 and 403, thus, are not retroactively available to those already sentenced. *See United States v. Wiseman*, No. 18-3904, 2019 WL 3367615, at *3 (6th Cir. July 26, 2019) (explaining that "the First Step Act is largely forward-looking and not retroactive" (citing First Step Act § 401)). These other provisions in the First Step Act's Title IV highlight Congress's intention that the law's sentencing reforms were not intended to disturb the finality of sentences, as provided in § 3582(c), absent congressional

authorization.  To adopt the defendants' contrary position would require ignoring Congress's obvious consideration of § 3582(c) within the First Step Act to find that § 3582(c)'s rule of finality was impliedly made inapplicable to Section 404.  This is a dubious inference given the full and plain text of the First Step Act.

Accordingly, this Court rejects the defendants' claim that Section 404 created a "freestanding remedy that authorizes the district court to impose a reduced sentence for a covered offense," independent of § 3582(c), White Reply at 11; *accord* Hicks Reply at 10; Hughes Reply at 10, since that position fails to grapple with the statutory text of both § 3582(c) and the First Step Act that compel the contrary conclusion.

### 2.   *The Defendants Are Not Entitled to Plenary Resentencing Hearings with Defendants Present.*

The fact that § 3582(c) governs sentence reductions for eligible defendants under Section 404 has at least two consequences disputed here for the scope and logistics of these proceedings. First, § 3582(c)(1)(B), together with the explicit direction in Section 404(b) that a sentence modification is authorized "as if sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed," indicates that Section 404 provides a "circumscribed opportunity" for "sentencing relief," and "does not include changes to features of earlier sentencing decisions not affected by" Section 404.  *United States v. Dunn*, 631 F.3d 1291, 1293 (D.C. Cir. 2011) (internal quotation marks omitted) (discussing § 3582(c)(2) and quoting *Dillon*, 560 U.S. at 827).  "This is so because it would be quite incongruous" for § 3582(c)(1)(B) to "provide[] an avenue for sentencing adjustments wholly unrelated to" Section 404's express authorization to modify a sentence only in a particular way.  *Id.* at 1293 (internal quotation marks and citation omitted).  Indeed, if § 3582(c)(1)(B) "permitted sentencing adjustments unrelated to" the statutory authorization for a modification, every congressional authorization to reduce

previously imposed criminal penalties "would carry a significant collateral windfall to all affected prisoners, reopening every aspect of their original sentences" and eviscerating § 3582(c)'s overarching rule of finality.  *Id.* at 1294 (internal quotation marks and citation omitted).

Notwithstanding this statutory backdrop, the defendants characterize Section 404 as providing "resentencing" authority, rather than just "[m]odification of an imposed term of imprisonment," as § 3582(c) is titled.  White Mot. at 8; *accord* Hicks Suppl. Mot. at 8; Hughes Mot. at 7.  The defendants reason that, even if applicable, § 3582(c)(1)(B) authorizes a modification to the extent "expressly permitted by statute," and, in the defendants' view, Section 404 confers "broad . . . resentencing authority," with "only the implied limitation that the Court cannot impose a sentence lower than any statutory mandatory minimum applicable under the [FSA] to the defendant's offenses of conviction."  White Mot. at 8; White Reply at 11 (emphasis omitted); *accord* Hicks Suppl. Mot. at 8; Hicks Reply at 11; Hughes Mot. at 6–7; Hughes Reply at 11.[10]  The defendants discount precedents emphasizing the circumscribed nature of a § 3582(c)(2) proceeding for retroactive guideline amendments, such as *Dillon* and its progeny, as not controlling whether a Section 404 proceeding, under § 3582(c)(1)(B), is a similarly limited proceeding.  White Reply at 12; Hicks Reply at 12; Hughes Reply at 12.

The defendants are correct up to a point.  Section 3582(c)(1)(B) circumscribes the authority to modify a sentence co-extensively with the statute authorizing such modification and

---

[10]     The defendants have not identified the precise contours of their argument that Section 404 authorizes a "broad scope of resentencing authority."  White Mot. at 8; Hicks Suppl. Mot. at 8; Hughes Mot. at 6–7.  For instance, the defendants, at a minimum, seek application of "current law," *see, e.g.*, White Reply at 11, regardless of whether that law was affected in any way by FSA's sections 2 or 3, as well as a "resentencing hearing," *id.* at 14, to "impose a new sentence . . . in place of" the defendants' "current sentence[s]," *id.* at 11.  Notwithstanding the defendants' intimation that Section 404 entitles them to a plenary resentencing for imposition of a new sentence, the defendants have not gone so far to claim that they are entitled to the full array of sentencing procedures and rights provided for in Federal Rule of Criminal Procedure 32, such as the preparation of a new presentence investigation report.  *See generally* FED. R. CRIM. P. 32.

thus the limits on any modification must be found in the authorizing statute.  The defendants veer

off from the statutory language in Section 404, however, to construe this provision as authorizing

broad, plenary resentencing authority.  On this point, *Dillon*'s analysis provides helpful and

binding precedent.

In *Dillon*, the Supreme Court concluded that in § 3582(c)(2), Congress did not authorize

a "plenary resentencing proceeding" because § 3582(c)(2) only granted the power to "'reduce'

an otherwise final sentence in circumstances specified by the [U.S. Sentencing] Commission"

and applied "only to" a "limited class of prisoners" whose sentences were, pursuant to the

Commission's policy statement at U.S.S.G. § 1B1.10 "based on a sentencing range subsequently

lowered by the Commission."  560 U.S. at 825–26.  Thus, in *Dillon*, the Supreme Court focused

on the Commission's policy statement to assess the contours of judicial authority to modify an

otherwise final sentence.  *See id.*

Similarly, here, modifications to a sentence under § 3582(c)(1)(B) and Section 404 are

circumscribed by the "express" terms of Section 404.  Section 404, in turn, authorizes a reduced

sentence only "as if" FSA's sections 2 and 3 "were in effect at the time the covered offense was

committed."  First Step Act § 404(b).  Even more limiting, the reduction is available only to an

eligible defendant who was sentenced for a "covered offense," *id.*, and is not excluded by the

"limitations" in Section 404(c), *id.* § 404(c).  Congress, therefore, did not expressly or otherwise

authorize a "plenary resentencing proceeding" in Section 404.  *See Dillon*, 560 U.S. at 826.

A second circumstance flowing from Section 404 being governed by § 3582(c) relates the

general requirement that at any sentencing, a hearing be held at which the defendant is present.

*See* FED. R. CRIM. P. 32(i), 43(a)(3).  Here, the defendants have voluntarily waived their presence

at any hearing for sentence modification under Section 404, but only if their requests for a

reduction in their sentences are granted.  White Reply at 15; Hicks Reply at 15; Hughes Reply at

14.  Otherwise, they demand that they be physically present at what they characterize as a

"resentencing hearing."  White Reply at 2; Hicks Reply at 2; Hughes Reply at 1.  Yet, because

this proceeding "involves the . . . reduction of sentence under . . . 18 U.S.C. § 3582(c)," FED. R.

CRIM. P. 43(b)(4), no hearing is required and the defendants "need not be present," *id.*  "Other

district courts analyzing First Step Act motions for relief agree."  *Barber*, 2019 WL 2526443, at

*3 (collecting cases); *see also Dillon*, 560 U.S. at 826 (explaining that Federal Rule of Criminal

Procedure 43(b)(4) "sets the proceedings authorized by § 3582(c)(2) . . . apart from other

sentencing proceedings" by not requiring that "a defendant be present at 'sentencing'").

Consequently, no hearing is required to afford the defendants an opportunity to be present and,

given the comprehensiveness of the briefing and record in this case, the Court concludes that no

hearing is necessary.

   **C.    *Apprendi* and *Alleyne* Do Not Apply to Section 404 Sentence-Modification
           Proceedings.**

   The Supreme Court has "repeatedly explained [that] any increase in a defendant's

authorized punishment contingent on the finding of a fact requires a jury and proof beyond a

reasonable doubt no matter what the government chooses to call the exercise."  *United States v.*

*Haymond*, 139 S. Ct. 2369, 2379 (2019) (plurality) (internal quotation marks and citation

omitted); *see also United States v. Stoddard*, 892 F.3d 1203, 1219 (D.C. Cir. 2018) (noting that

under the Sixth Amendment, "facts 'that increase the prescribed range of penalties to which a

criminal defendant is exposed,'" (quoting *Apprendi*, 530 U.S. at 490), and "[f]acts that increase

the mandatory minimum sentence are [ ] elements and must be submitted to the jury and found

beyond a reasonable doubt," (quoting *Alleyne*, 570 U.S. at 103) (alterations in original)).  The

defendants invoke this *Apprendi/Alleyne* rule to argue that only drug quantities found by a jury

beyond a reasonable doubt may be relied on when exercising discretion under Section 404(b) to "impose a reduced sentence as if Sections 2 or 3" of the FSA were in effect, since those drug quantities "determine" their "statutory ranges."  White Reply at 4; Hicks Reply at 4; Hughes Reply at 4.  Given that for the defendants' convictions on Count 1, "the jury found no specific amount of crack cocaine," and for White's conviction on Count 18 and Hicks' conviction on Count 11, the jury found only "5 grams or more" of crack cocaine, the defendants argue they "cannot be responsible for anything more than a detectable amount of crack cocaine for purposes of Count 1" and Count 5, and only 5 grams for Counts 11 and 18.  White Mot. at 9; Hicks Mot. at 9; Hughes Mot. at 7.  Based on those quantities, their offenses are now "punishable under § 841(b)(1)(C) with a statutory maximum of 20 years of imprisonment."  White Mot. at 9; *accord* Hicks Suppl. Mot. at 9; Hughes Mot. at 7.  The defendants protest that "[a]pplying any greater statutory penalties to" their "offenses of conviction would be a return to an unconstitutional practice of basing a defendant's statutory range on judge-found facts."  White Mot. at 9; *accord* Hicks Suppl. Mot. at 9; Hughes Mot. at 7–8.  The defendants are, again, wrong.

In making this argument—and presumably confident in adoption of their position that the statutory maximum of 20-years' imprisonment under 21 U.S.C. §841(b)(1)(C) applies—the defendants do not contest the quantities of drugs for which they were each found accountable on their separate counts of conviction.  White Mot. at 10 n.6; Hicks Suppl. Mot. at 10 n.7; Hughes Mot. at 8 n.4.  Nor do the defendants contest their original guideline sentencing ranges, conceding that, even if their guideline sentencing ranges were re-calculated under the current GUIDELINES MANUAL and as if FSA's section 2 were in effect, those sentencing ranges would remain the same as the sentences they are currently serving.  White Mot. at 11; Hicks Suppl. Mot. at 10; Hughes Mot at 8.  Moreover, the defendants agree that their full offense conduct may

be considered in deciding whether to impose a reduced sentence under the First Step Act's

Section 404(b).  *See* White Reply at 17 ("White does not seek to minimize the offense conduct in

this case; he acknowledges that the offense conduct was serious, but he strongly disagrees that it

merits a sentence of life in prison without the possibility of parole . . . ."); *accord* White Reply at

18–19 ("Hicks does not seek to minimize the offense conduct in this case . . . ."); Hughes Reply

at 17 ("Hughes does not seek to minimize the offense conduct in this case . . . .").

*Apprendi* and *Alleyne*'s holdings, rooted in the Sixth Amendment right to a jury trial, are

not implicated here because (1) Section 404 does not increase any defendant's sentencing

exposure; (2) Section 404 relief for eligible defendants is discretionary; and (3) Section 404 does

not authorize retroactive application of *Apprendi* and *Alleyne* to the defendants' 1994 sentences.

Each reason is discussed *seriatim*.

### 1. *Apprendi and Alleyne Do Not Apply Because the Defendants' Statutory Penalty Range May Not Be Increased.*

*Apprendi* and *Alleyne* do not prohibit consideration of the defendants' judge-found drug

quantities in a sentence modification proceeding under Section 404 because the defendants'

statutory penalty ranges cannot be increased.  This statutory provision authorizes only two

possible outcomes: the defendants' statutory ranges may remain the same, as originally decided

in 1994, or be reduced.  *See* First Step Act § 404(b) (solely permitting imposition of a "reduced

sentence"); *id.* § 404(c) (referring to "motion made under this section to reduce a sentence").

Thus, consideration of a sentence reduction under Section 404 does not serve to "increase either

the statutory maximum or minimum" or produce a "new, aggravated crime" that would trigger

the Sixth Amendment right to have a jury finding beyond a reasonable doubt.  *See Alleyne*, 570

U.S. at 113 & n.2; *see also United States v. Banuelos*, No. 02-CR-084 WJ, 2019 WL 2191788, at

*3 (D.N.M. May 21, 2019) (concluding *Apprendi* and *Alleyne* were inapposite to First Step Act's

Section 404, because "[d]eclining to reduce a sentence is not tantamount to an increase," and this provision does not "implicate Defendant's right to a jury trial").

The defendants object that reliance on the judge-found drug quantities from their original sentencing hearing would leave their statutory penalty ranges the same and thereby "effectively" increase their statutory penalty ranges applicable in this sentence modification proceeding. White Reply at 7; *accord* Hicks Reply at 7; Hughes Reply at 7. This objection ignores the significance of the contextual limits on a Section 404 proceeding, namely: the defendants face no possibility, let alone even a sliver of risk, that any factual matters may be considered mandating any increase in their already final sentences. As the Supreme Court explained in *Dillon*, when considering authorization, under § 3582(c)(2), for a sentence reduction due to a retroactive guideline amendment, these sentence-modification proceedings "are not constitutionally compelled" and thus "no constitutional requirement of retroactivity [] entitles defendants sentenced to a term of imprisonment to the benefit of subsequent" amendments that would result in more lenient sentences. 560 U.S. at 828. The exceptions to an otherwise final judgment provided in § 3582(c) are a "congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines," *id.*, or a statute. In this way, such sentence-modification proceedings "are readily distinguishable from other sentencing proceedings" with a "substantially different purpose," *id.* at 830, and thus "do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt," *id.* at 828. Instead, while "[t]aking the original sentence as given, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment" but rather only affect "the judge's exercise of discretion within that range," and "the exercise of such

discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts," *id*. at 828–29 (citing *Apprendi*, 530 U.S. at 481).

For these reasons, the contextual difference between a sentence-modification proceeding under § 3582(c) and a sentencing hearing means that *Apprendi* and *Alleyne* simply do not apply here. *See United States v. Cook*, 594 F.3d 883, 890 (D.C. Cir. 2010) (rejecting defendant's argument, made in support of sentence reduction under § 3582(c)(2), that "his 1994 mandatory minimum sentence [was] unlawful," under *Apprendi,* citing the "standard practice for the sentencing court to make findings of fact on drug quantity," since such consideration was distinct from the "narrow section 3582(c)(2) determination").

Notably, the same argument put forward by the defendants—that relying on judge-found facts "effectively" to leave a statutory mandatory minimum penalty in place runs afoul of the *Apprendi/Alleyne* rule—has been made unsuccessfully in the analogous context of the safety-valve provision at 18 U.S.C. § 3553(f), which "exempts covered offenses from mandatory-minimum sentences." *United States v. Mosquera-Murillo*, 902 F.3d 285, 287 (D.C. Cir. 2018). Specifically, § 3553(f) provides that, for certain enumerated offenses, "'the court shall impose a sentence pursuant to [the sentencing] guidelines . . . without regard to any statutory minimum sentence, if the court finds at sentencing' that five requirements have been met." *Id.* at 292 (alterations in original) (quoting § 3553(f)). Eight Circuit Courts of Appeals have considered, and unanimously rejected, claims that *Alleyne* requires facts precluding safety-valve eligibility to be found by a jury beyond a reasonable doubt, because those facts, effectively, increase a defendant's statutory penalty range by leaving intact the defendant's applicable mandatory minimum. *See United States v. Fincher*, 929 F.3d 501, 504 (7th Cir. 2019) (concluding *Alleyne* does not bar "judicial factfinding of safety-valve eligibility factors," and noting "[e]ach of the

other circuits that have considered the question" likewise reached the same conclusion (citing

*United States v. Leanos*, 827 F.3d 1167, 1169–70 (8th Cir. 2016); *United States v. King*, 773

F.3d 48, 55 (5th Cir. 2014); *United States v. Lizarraga-Carrizales*, 757 F.3d 995, 997–99 (9th

Cir. 2014); *United States v. Harakaly*, 734 F.3d 88, 97–99 (1st Cir. 2013); and also citing *United*

*States v. Caballero*, 672 F. App'x 72, 74–75 (2d Cir. 2016); *United States v. Juarez-Sanchez*,

558 F. App'x 840, 843 (10th Cir. 2014); *United States v. Silva*, 566 F. App'x 804, 807–08 (11th

Cir. 2014))).  "Underlying these decisions is the recognition that a mandatory minimum sentence

is not increased by the defendant's ineligibility for safety-valve relief.  Rather, it is already

triggered by the offense; the safety-valve provision merely provides lenity."  *Fincher*, 929 F.3d

at 504.

In this case, too, reliance on judge-found drug quantities to determine how FSA's

sections 2 or 3 would apply were these new penalties in effect at the time the covered offense

was committed, *see* First Step Act § 404(b), cannot be tantamount to an increase, or aggravation,

of the defendants' statutory penalty ranges, which were already determined in 1994, *see Fincher*,

929 F.3d at 504.  Section 404 "merely provides lenity" to impose a reduced sentence, potentially

below that original and otherwise final statutory penalty range.  *Id.*; *see also Dillon*, 560 U.S. at

828.  Since Section 404 cannot aggravate the defendants' statutory penalties, *Apprendi* and

*Alleyne* "do[] not apply to judicial factfinding that precludes" or limits relief under Section 404.

*Fincher*, 929 F.3d at 504.

> **2.**     ***Apprendi and Alleyne Do Not Apply Because Section 404 Relief is
> Discretionary.***

No sentence reduction is required under Section 404.  *See* First Step Act § 404(c)

("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to

this section.").  Section 404(b) also makes abundantly clear the discretionary nature of any

sentence reduction, providing that "[a] court . . . *may* . . . impose a reduced sentence." *Id.* §

404(b) (emphasis added).  The government addresses only in passing, and the defendants not at

all, the import of Section 404's express authorization of judicial discretion on the applicability of

the Sixth Amendment right to a jury trial on facts that increase either the statutory maximum or

minimum.  *See* Gov't's Resp. (White) at 19; Gov't's Resp. (Hicks) at 19; Gov't's Resp.

(Hughes) at 18.  This grant of judicial discretion confirms that the *Apprendi/Alleyne* rule does not

apply here.

The Supreme Court's exposition, in *United States v. Booker*, of the applicability of

*Apprendi* and its progeny to judge-found facts under a mandatory guideline system is instructive.

*Booker* "reaffirm[ed] [the] holding in *Apprendi*," 543 U.S. at 244, to conclude the Sixth

Amendment is violated by imposition of an enhanced sentence under mandatory guidelines

based on judge-found facts (other than a prior conviction) that were not found by the jury or

admitted by the defendant, *id*.  The remedy was to treat the U.S. Sentencing Guidelines as

advisory rather than mandatory to comport with the Sixth Amendment, since "[i]f the Guidelines

as currently written could be read as merely advisory provisions that recommended, rather than

required, the selection of particular sentences in response to differing sets of facts, their use

would not implicate the Sixth Amendment." *Id.* at 233.  *Booker* reasoned that courts

undoubtedly have "the authority . . . to exercise broad discretion in imposing a sentence within a

statutory range" and thus the "constitutional issues presented . . . would have been avoided

entirely if Congress had omitted from the [Sentencing Reform Act] the provisions that ma[de]

the Guidelines binding on district judges." *Id.*

Likewise, Section 404 serves to "recommend, rather than require, the selection of

particular sentences in response to differing sets of facts." *Id.* at 233; *see also Beckles v. United*

*States*, 137 S. Ct. 886, 893 (2017) ("Yet in the long history of discretionary sentencing, this Court has 'never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.'" (quoting *Booker*, 543 U.S. at 233)).  The exercise of discretion through Section 404 thus does "not implicate the Sixth Amendment."  *Booker*, 543 U.S. at 233.

To be sure, some district courts have found that *Apprendi* and *Alleyne* apply in Section 404 proceedings despite the discretionary nature of this sentence-modification proceeding because a drug quantity determination determines the statutory penalty range available to a defendant.  *See, e.g.*, *United States v. Jones*, No. 1:08CR00040, 2019 WL 3074075, at *3 (W.D. Va. July 15, 2019) ("[R]elying on the drug weight attributed to defendants in their PSRs . . . affects more than the judge's discretion within a prescribed statutory range — it determines the prescribed range.").  The defendants latch on to such decisions as reflecting a "growing consensus."  White Reply at 9 (collecting cases); *accord* Hicks Reply at 8; Hughes Reply at 8.

This consensus, if "growing," is doing so in the wrong direction.  Even though a defendant's statutorily permissible sentencing range may change upon application of FSA's section 2, under Section 404, by permitting a sentence below a defendant's originally imposed mandatory minimum, "[t]aking the original sentence as given, any facts found" in this proceeding "do not serve to increase the prescribed range of punishment." *Dillon*, 560 U.S. at 828.  As *Alleyne* made clear, "the Sixth Amendment applies where a finding of fact both alters the legally prescribed range *and* does so in a way that aggravates the penalty."  *Alleyne*, 570 U.S. at 113 n.2 (emphasis in original).  Relying on judicial factfinding as to drug quantity at the original sentencing neither alters nor aggravates a defendant's imposed sentence when the judge

in a sentence-modification proceeding has ultimate discretion whether to reduce the sentence of eligible defendants. Thus, *Apprendi* and *Alleyne* are inapplicable to Section 404 proceedings.

### 3. *Apprendi and Alleyne Do Not Apply Retroactively.*

In seeking application of the *Apprendi/Alleyne* rule in this sentence-modification proceeding, the defendants raise collateral attacks on the constitutionality of their original sentencings. White Reply at 4; Hicks Reply at 4; Hughes Reply at 4. Specifically, the defendants assert that "[t]he former practice of using uncharged judge-found facts to determine statutory ranges was always unconstitutional," and "did not just become unconstitutional when *Apprendi* and its progeny were decided." White Reply at 4 (emphasis omitted); *accord* Hicks Reply at 4; Hughes Reply at 4. They urge application of *Apprendi* and *Alleyne* so that an "unjust" aspect of their sentences is addressed. White Reply at 22; *accord* Hicks Reply at 22; Hughes Reply at 18.

This argument amounts to using Section 404's limited congressional act of lenity for a collateral attack on their convictions. Such a collateral attack is not "expressly permitted" by either § 3582(c)(1)(B) or Section 404. 18 U.S.C. § 3582(c)(1)(B). Instead, "the proper vehicle for" these arguments "is a petition under 28 U.S.C. § 2255." *See United States v. Lafayette*, 585 F.3d 435, 439 (D.C. Cir. 2009) (holding *Apprendi* challenge to conviction under § 3582(c)(2) proceeding was misplaced and should be considered through § 2255). As noted, *supra*, in Part I. A.2.a, b, and c, each defendant has launched such collateral attacks on numerous occasions previously, without success, and this proceeding is not a vehicle for revival of those claims.

"[T]he Supreme Court is the only entity that can make a new rule retroactive within the meaning of § 2255 and only an express holding or a combination of cases that necessarily dictate retroactivity of a new rule will suffice." *Id.* at 439 (internal quotation marks and alterations omitted) (quoting *Tyler v. Cain*, 533 U.S. 656, 663 (2001)). The Supreme Court has not made

*Apprendi* and its progeny "retroactive within the meaning of § 2255," *id.*, since these cases express rules allocating decisionmaking authority between a judge and the jury and "are prototypical procedural rules," *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004), rather than "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding" entitled to retroactive effect, *id.* at 355 (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)); *see also United States v. Wyche*, No. 14-3071, 2015 WL 1606908, at *1 (D.C. Cir. Mar. 24, 2015) ("This court has ruled that *Alleyne* does not apply retroactively."). In reaching that conclusion, the Supreme Court observed that judicial factfinding may be "more accurate" than jury factfinding and further found "implausible that judicial factfinding so *seriously* diminishes accuracy as to produce an impermissibly large risk of injustice." *Schriro*, 542 U.S. at 356 (emphasis in original).

In short, the defendants' insistence that *Apprendi* and *Alleyne* be applied retroactively in this sentence-modification proceeding, as a matter of "just" outcomes, has been squarely rejected. This limited sentence reduction proceeding does not provide a forum to rehash that issue.[11]

---

[11]     The defendants conflate this Section 404 proceeding with a 28 U.S.C. § 2255 proceeding by relying on *United States v. Hammond*, No. 92-cr-471 (BAH), ECF No. 113 (Mar. 8, 2019) ("*Hammond* Resentencing Tr."), in which this Court found that that a defendant originally sentenced under 21 U.S.C. § 841(b)(1)(A), but with no jury finding of drug quantity, was subject to the lower penalty provision in 21 U.S.C. § 841(b)(1)(C) on resentencing. White Mot. at 9; Hicks Mot. at 9; Hughes Mot. at 7. *Hammond* is inapposite, however, since, in that case, the defendant successfully obtained vacatur of his sentence through a § 2255 motion, leading to a plenary resentencing hearing. *See United States v. Hammond*, 351 F. Supp. 3d 106, 130 (D.D.C. 2018); *see also Hammond* Resentencing Tr. at 14:20-23 (citing, *inter alia*, *Krieger v. United States*, 842 F.3d 490, 505 (7th Cir. 2016) ("Because [the defendant's] sentence is vacated, the district court will be resentencing [the defendant] on a clean slate."). The broad remedy available under § 2255 authorizes the court "to vacate, set aside or correct the sentence," 28 U.S.C. § 2255(a), compared to the limited remedy under 18 U.S.C. § 3582(c)(1)(B), in which all aspects of the defendants' sentences remain final except as "expressly permitted by statute," *id.*, and here Section 404 does not "expressly permit[]" application of *Apprendi* and its progeny.

**D.      Relief Is Neither Available Nor Warranted, Except for Hicks' Sentence on Count 11.**

Having concluded that the defendants are eligible to be considered for relief under Section 404, the final issues to address are whether relief is available and, if so, to what extent a sentence reduction is warranted as a matter of discretion.  To return to the governing text, Section 404 permits, on motion of a defendant, the government, the Director of the Bureau of Prisons, or a court, "a reduced sentence as if sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed."  First Step Act § 404(b).  The starting point then is determining how each defendant's sentence would be affected had FSA's section 2 been "in effect at the time the covered offense was committed."  *Id*.  Any defendant whose statutory penalty range is reduced under FSA's section 2 may receive a reduced sentence, at least to the extent of the now-available statutory penalty in current law.  The relief "expressly permitted" by Section 404(b) does not stop there, however.  18 U.S.C. § 3582(c)(1)(B).

Section 404(b) expressly permits "a reduced sentence," if FSA's sections 2 or 3 would have had an effect on a defendant's sentence and, consequently, does not restrict such "effect" solely to the "covered offense" that made the defendant eligible.  First Step Act § 404(b).  In other words, while Section 404(b) makes clear that a defendant must have previously been "sentence[d] for a covered offense" to be eligible for relief, *see supra* Part II.A, the impact of FSA's section 2 must be considered more broadly than just a focus on the covered offense in assessing whether "a reduced sentence" is available to an eligible defendant.  For instance, FSA's section 2 may reduce the statutory penalties for a defendant's sentence on a "covered offense" and, in doing so, may also directly affect a guideline determination for a non-covered offense that was originally grouped with the "covered offense."  *See, e.g.*, U.S.S.G. § 4B1.1(b) (setting "career offender" offense level based on "offense statutory maximum").  In this

52

circumstance, a reduction would be available on the non-covered offense, because had FSA's section 2 been in effect at the time the covered offense was committed, the defendant's sentencing range under the GUIDELINES MANUAL would have been different for the non-covered offense, a direct result of FSA's section 2.[12]

As to the extent of any sentence reduction, Section 404(c) expressly states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section," indicating that a court may exercise discretion.  At the same time, neither Section 404 nor 18 U.S.C. § 3582(c)(1)(B) expressly references whether the exercise of discretion should be guided by the sentencing factors set forth at 18 U.S.C. § 3553(a).[13]  For this reason, courts have debated whether § 3553(a) factors must or may or may not be addressed.  *Compare United States v. Crews*, No. CR-06-418 (JFC), 2019 WL 2248650, at *6 (W.D. Pa. May 24, 2019) (concluding that "[a] court must . . . consider the factors set forth in 18 U.S.C. § 3553(a) when reducing a sentence" under Section 404), *and Mitchell*, 2019 WL 2647571, at *7 ("[C]onsideration of . . . the factors set forth in 18 U.S.C. § 3553(a) is appropriate under Section 404(b) . . . ."), *with United States v. Martin*, No. 03-CR-795 (BMC), 2019 WL 2289850, at *4 (E.D.N.Y. May 29,

---

[12]       The distinction between eligibility, based on Section 404(a)'s definition of "covered offense," and the relief available, under Section 404(b), is important in other circumstances, as well.  As noted, *supra* in Part II.A.2, Section 404 extends eligibility more broadly than the government posits, by tying eligibility to the statute underlying a defendant's conviction and penalty, so that courts may take a second look at the sentence imposed prior to the effective date of the FSA.  For example, unlike this case, when drug quantities attributable to an eligible defendant are disputed, with no underlying jury or judicial factfinding available, additional factfinding may be needed to determine whether a reduction is available.  *See United States v. Wyche*, 741 F.3d 1284, 1293 (D.C. Cir. 2014) (noting that in a § 3582(c)(2) proceeding, "in order to determine the defendant's amended guideline range for a drug-related offense," "the drug quantity attributable to the defendant" must be determined and "[i]f the original sentencing court failed to make a specific drug-quantity calculation," the court "may have to make its own quantity finding in order to determine the defendant's guideline range").

[13]       In stark contrast to 18 U.S.C. § 3582(c)(1)(B), which makes no reference to § 3553(a), a sentence modification proceeding prompted by a compassionate release request or a retroactive guideline amendment requires consideration of § 3553(a) factors.  *See* 18 U.S.C. § 18 U.S.C. § 3582(c)(1)(A) (authorizing sentence reduction, upon finding "extraordinary and compelling reasons" for eligible defendants "after considering the factors set forth in section 3553(a) to the extent that they are applicable . . . ."); *id.* § 3582(c)(2) (requiring "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable . . . .").

2019) ("Although some district courts have considered the § 3553(a) sentencing factors in determining whether to grant relief under the [First Step Act], I disagree with their approach, because it is not called for by the text or purpose of the statute.").  Notwithstanding that neither § 3582(c)(1)(B) nor Section 404 supply any standard for the exercise of discretion, the parties agree that courts should be guided by the sentencing factors set forth in § 3553(a).  White Reply at 17; Gov't Resp. (White) at 29; Hicks Reply at 17; Gov't Resp. (Hicks) at 28; Hughes Reply at 16; Gov't Resp. (Hughes) at 27.  Indeed, silence will not be read as a prohibition on using the common-sense factors pertinent to sentencing in § 3553(a), particularly since such consideration furthers Section 404's purpose of providing eligible defendants individualized judicial review of their sentences to account for the effect of FSA's sections 2 and 3.

Section 404(b) could have been written more clearly, an obvious observation when compared to the U.S. Sentencing Commission's more clearly crafted policy guidance on retroactivity in U.S.S.G. § 1B1.10.  Section 404(b)'s text partially tracks the language of the Sentencing Commission's policy statement, at U.S.S.G. § 1B1.10(b)(1), governing sentencing reductions resulting from amended guideline ranges, but omits the policy statement's clarifying guidance on determining whether and to what extent a reduction is authorized.  *Compare* U.S.S.G. § 1B1.10(b)(1) ("[T]he court shall determine the amended guideline range that *would have been applicable* to the defendant *if the amendment(s)* to the guidelines listed in subsection (d) *had been in effect at the time* the defendant was sentenced" (emphasis added)), *with* First Step Act § 404(b) ("A court . . . may . . . impose a reduced sentence *as if* sections 2 and 3 of the [FSA] *were in effect at the time* the covered offense was committed." (emphasis added)).  The policy statement goes on to clarify that, in determining the extent of any reduction, the court should only substitute the amended guideline, "leav[ing] all other guideline application decisions

unaffected," U.S.S.G. § 1B1.10(b)(1), with no reduction being "less than the minimum of the amended guideline range," *id*. § 1B1.10(b)(2)(A), absent substantial assistance to authorities, or "less than the term of imprisonment the defendant has already served," *id*. § 1B1.10(b)(2)(C).[14] In contrast, Section 404 lacks an analogous express limitation that only substitution of a reduced statutory penalty range on a "covered offense" is permissible, thereby authorizing a reduction on any other component of the sentence affected by FSA's section 2 or 3, to the extent warranted after consideration of the § 3553(a) factors.

Nonetheless, while Section 404(c) makes clear that a court is not required "to reduce any sentence pursuant to this section," this provision does not express the converse that courts have unfettered discretion to impose a reduced sentence on eligible defendants.  Thus, sentence reductions under Section 404 are expressly circumscribed by FSA's section 2 or 3, and if those FSA provisions have no effect on a defendant's sentence, no sentence reduction is available to award.

> ### 1.    *No Sentence Reduction is Available, Except as to Hicks' Conviction on Count 11.*

As applied here, the parties do not dispute that the defendants' sentences, based on their convictions on Counts 1 and 5, for offense conduct involving 21.87 kilograms, as to White and Hicks, and 10.94 kilograms, as to Hughes on Count 1, of crack cocaine, would remain the same, subject to 21 U.S.C. § 841(b)(1)(A)(iii) (2010), which provides a penalty range of 10 years to life in prison for an offense involving "280 grams or more of a mixture or substance . . . which contains cocaine base."  White Reply at 2; Gov't's Resp. (White) at 13; Hicks Reply at 2;

---

[14]     The policy statement, at U.S.S.G. § 1B1.10(b)(2)(A), disallowing any sentence reduction below the bottom of the amended guideline range is based on the Supreme Court's conclusion "that proceedings under section 3582(c)(2) are not governed by *United States v. Booker*, 543 U.S. 220 (2005), and this policy statement remains binding on courts in such proceedings.  *See Dillon v. United States*, 560 U.S. 817 (2010)."  U.S.S.G. § 1B1.10, comment. (backg'd).

Gov't's Resp. (Hicks) at 13–14; Hughes Reply at 2; Gov't's Resp. (Hughes) at 12.  Furthermore, the parties do not dispute that White's concurrent term of 480 months' imprisonment on Count 18 involving 49.99 grams of crack cocaine, would also remain the same, subject to 21 U.S.C. § 841(b)(1)(B)(iii) (2010), which provides a penalty range of 5 to 40 years in prison for an offense involving "28 grams or more of a mixture or substance . . . which contains cocaine base."  White Mot. at 6 n.4; Gov't's Resp. (White) at 5.  Thus, no sentence reduction is available to any defendant based on Counts 1 and 5 or to White based on Count 18.

Not only are the defendants' statutory penalties unchanged on Counts 1, 5 and 18, under FSA's section 2, but their sentencing ranges under the current GUIDELINES MANUAL would remain unchanged, as well.  White concedes that his base offense level for an offense involving 21.87 kilograms of cocaine base is now 36, U.S.S.G. § 2D1.1(c)(2), and the increases of eight offense levels, for possession of a dangerous weapon, *id.* §2D1.1(b)(1), obstruction of justice, *id.* § 3C1.1, and leadership role in the criminal activity, *id.* § 3B1.1(a), remain the same, for a final offense level of 44, which would be treated as an offense level of 43, *id.* § 5A, comment. (n.2) (instructing that "[a]n offense level of more than 43 is to be treated as an offense level of 43").  This offense level of 43, in combination with his criminal history category of I, would continue to result in a recommended sentencing range of life imprisonment, just as was the case at his 1994 sentencing.  White Mot. at 10–11.

Similarly, not only are Hicks' statutory penalties unchanged on Counts 1 and 5 under FSA's section 2, but in addition, he does not dispute that his sentencing range under the current GUIDELINES MANUAL would remain unchanged.  Hicks Suppl. Mot. at 10.  His base offense level for an offense involving 21.87 kilograms of cocaine base would now be 36, U.S.S.G. § 2D1.1(c)(2), and would be increased by ten levels, for possession of a dangerous weapon, *id.* §

2D1.1(b)(1), obstruction of justice, *id.* § 3C1.1, leadership role in the criminal activity, *id.* § 3B1.1(a), and reckless endangerment during flight, *id.* § 3C1.C, for a final offense level of 46, capped at an offense level of 43.  This final offense level of 43, in combination with his criminal history category of III, would result in the same recommended sentencing range of life imprisonment as his original sentencing range in 1994.

For Hughes, too, who has requested a reduction in his term of supervised release, his five-year supervised release term remains statutorily required for his conviction on Count 1.  *See* 21 U.S.C. § 841(b)(1)(A) ("[A]ny sentence under this subparagraph shall . . . impose a term of supervised release of at least 5 years in addition to such term of imprisonment . . . .").  Thus, no Section 404 relief is available to reduce his supervised release term.

In contrast to the defendants' sentences on Counts 1, 5, and 18, for Hicks' sentence on Count 11, the parties agree that his statutory penalty range for his 480-month sentence on Count 11, involving 5.426 grams of crack cocaine, would now be capped at 20 years, or 240 months, under 21 U.S.C. § 841(b)(1)(C) (2010), due to the reduced penalties in FSA's section 2.  Hicks Suppl. Mot. at 10; Gov't's Resp. (Hicks) at 14 n.11.  Hence, a reduction of Hicks' sentence on Count 11 is authorized.

### 2. *Relief Is Not Warranted, Even if Available, Except as to Hicks' Conviction on Count 11.*

Even if a sentence reduction were available on Counts 1, 5, and 18, the nature and circumstances of the defendants' crimes, and the severity of the defendants' offense conduct, involving the distribution of crack cocaine over several years and violence, including the murder and intimidation of witnesses against them, would not warrant relief.  At the same time, Hicks' sentence on Count 11 is reduced to time served, as he requested, Hicks Suppl. Mot. at 8, in light

of the now-available statutory maximum term of 20 years in 21 U.S.C. § 841(b)(1)(C).  Each defendant is discussed in turn.

### a.    Antone White

White's convictions on Counts 1, 5, and 18 would not warrant a sentence reduction under Section 404, even if a reduction were available.  As the government points out, White's "crimes that led to this sentence were serious ones, with lasting effects on the community and on the persons who were killed, injured, harassed, or intimidated."  Gov't's Resp. (White) at 29–30. White "orchestrated" the First Street Crew's distribution of 21.87 kilograms of cocaine base, *White*, 116 F.3d at 909, as a "conservative" estimate, Sentencing Tr. (May 11, 1994) at 90:8, as well as its "violent activities," *White*, 116 F.3d at 909, including the "brutal killing" of Arvell Williams, a cooperating witness, Sentencing Tr. (May 11, 1994) at 112:5; *see* Sentencing Tr. (May 9, 1994) at 43:4-7 ("I already found by clear and convincing evidence that Mr. White was involved and guilty of the killing of Arvell Williams and I heard nothing at the trial to deter me from that."); *White*, 116 F.3d at 916.  Moreover, with respect to White's suspected murder of three other witnesses whom White believed were cooperating with the government, White PSR ¶ 82, Judge Greene observed that although he did not take these "into account" since "none of that became part of" the trial record, Sentencing Tr. (May 11, 2019) at 112:1-3, but that "it is not farfetched to say that when you have . . . a brutal killing of an informer . . . other killings or other intimidation was involved particularly when some . . . witnesses came here obviously in fear and trembling," *id.* at 112:4-9.  This large-scale drug distribution and intolerable violence does not merit a sentence reduction.

Review of White's time in prison provides troubling evidence that he has not remediated. He has incurred twenty-four violations, and many of these were not minor infractions.  Gov't's Resp. (White) at 29; Bureau of Prisons Disciplinary Record (White) (July 22, 2019), ECF No.

710-1.  As the government has summarized, "6 have involved fighting, 3 have involved

weapons, 3 have involved drugs, and 1 involved threats."  Gov't's Resp. (White) at 29; Bureau

of Prisons Disciplinary Record (White) (July 22, 2019).  Although White attempts to minimize

these incidents as being from his "earlier years in prison," White Reply at 20, he concedes that

these violations "involve[d] fighting, weapons, and threats," with "the most recent occurring 10

years ago," *id.*  For these reasons, no sentence reduction would be warranted even if available.

### b.      Eric Hicks

Hicks' serious offense conduct on Counts 1 and 5 likewise would not warrant a sentence

reduction, even if available under Section 404.  For Count 11, involving 5.426 grams of cocaine

base, Hicks may receive a reduced sentence of up to 20 years' imprisonment, 21 U.S.C. §

841(b)(1)(C), and since Hicks has served approximately 26.5 years in prison, a sentence of time

served on Count 11 is granted.

Hicks "was in charge of the First Street Crew whenever . . . White was in jail or

otherwise occupied," Sentencing Tr. (May 11, 1994) at 132:13-14, leading the large-scale

distribution of over 21 kilograms of cocaine base.  Furthermore, Hicks engaged in obstructive

conduct, bribing another First Street Crew member to withhold information from the grand jury

that was investigating him for murder.  Sentencing Tr. (May 9, 1994) at 84:3-85:1; *see* Hicks

PSR ¶¶ 69, 89.  Hicks further showed a substantial disregard for others by fleeing from law

enforcement officers when they attempted to arrest him, by speeding at 80 miles per hour

through several red lights and crashing into four cars during rush hour.  Sentencing Tr. (May 11,

1994) at 133:4-7; *see* Hicks PSR ¶ 90.  For these reasons, no additional sentence reduction would

be warranted even if available.

### c.      Ronald Hughes

A reduction of Hughes' sentence on Count 1, even if available under Section 404, would not be warranted.  Hughes, who was responsible for 10.94 kilograms of cocaine base, participated with White in the murder of Williams, who was cooperating with the government, and threatened, while in D.C. jail, to "shank [] up" Dequette Barr, another member of the First Street Crew, when he heard that Barr planned to testify against Hughes at trial, Sentencing Tr. (May 9, 1994) at 69:14-19; Sentencing Tr. (May 11, 1994) at 139:5-6; Hughes PSR ¶¶ 76, 92.

Hughes' Bureau of Prisons disciplinary history demonstrates a continued pattern of violence while he was in prison.  Bureau of Prisons Disciplinary Record (Hughes) (May 14, 2019), ECF No. 712-1.  Furthermore, Hughes' disciplinary record involves a violation as recently as 2018, for failure to obey an order; pushing staff to flee and dispose of a cell phone in 2010, and another cell phone infraction in 2015.  Gov't Resp. (Hughes) at 28; Bureau of Prisons Disciplinary Record (Hughes) at 1–3.  Although Hughes has been released from prison and is taking steps towards a law-abiding life by holding a job and resuming a family life, Hughes Mot. at 6; Hughes Reply at 17, Hughes' disciplinary record, over the course of twenty years, shows various incidents of violence, such as "assault on a staff member," "assault of an inmate," "fighting with an inmate," "possession of a dangerous weapon," and "assault with serious injury."  Gov't Resp. (Hughes) at 28; Bureau of Prisons Disciplinary Record (Hughes) (May 14, 2019).  Accordingly, a reduction is Hughes' sentence is not warranted, even if a reduction were available under Section 404.[15]

---

[15]      Hughes is not without alternative recourse, however.  After expiration of one year of supervised release, he may seek early termination of his supervision, so long as consideration of certain factors under 18 U.S.C. § 3553(a) demonstrate that early termination "is warranted by the conduct of the defendant [on supervision] and the interest of justice."  18 U.S.C. § 3583(e)(1).  *See United States v. King*, No. 03-CR-249 (BAH), 2019 WL 415818, at *2 (D.D.C. Feb. 1, 2019); *United States v. Harris*, 258 F. Supp. 3d 137, 142–43 (D.D.C. 2017) (BAH) (concluding that "[t]he weight of authority confirms that § 3583(e)(1) authorizes termination of statutorily mandated term of supervised release resulting from a pre–2002 conviction under § 841(a)." (citing cases and U.S. SENTENCING

## III.    CONCLUSION

For the foregoing reasons, the motions of Antone White, Eric Hicks, and Ronald Hughes to reduce their sentences, pursuant to Section 404 of the First Step Act, are denied, except that the sentence imposed on Eric Hicks for his conviction on Count 11 is reduced to time-served. Otherwise the sentences imposed on the defendants for their convictions on Counts 1 and 5, and White's 480-month sentence on Count 18, remain unchanged.  An appropriate Order accompanies this Memorandum Opinion.

Date: August 6, 2019

_____
BERYL A. HOWELL
Chief Judge

---

COMM'N, FEDERAL OFFENDERS SENTENCED TO SUPERVISED RELEASE 35 (July 2010))); *see also United States v. Wesley*, 311 F. Supp. 3d 77, 79 & n.1 (D.D.C. 2018) (CKK) (same).